MEAD SCHOOL DISTRICT No. 354, *Respondent,* v. MEAD EDUCATION ASSOCIATION *et al, Petitioners.*

*William J. Powell* and *Bryan P. Harnetiaux,* for appellants.

*Donald C. Brockett, Prosecuting Attorney,* by *Jerry Neal, Chief Civil Deputy,* and *Garald A. Gesinger, Deputy,* for respondent.

*George M. Mack* (of *Roberts, Shefelman, Lawrence, Gay & Moch*), amicus curiae, on behalf of Washington Education Association.

UTTER, J.—In the spring of 1974 petitioner Mead Education Association and its members engaged in a brief strike against respondent Mead School District. The district sought and obtained a temporary injunction of the strike, which petitioners appealed by extraordinary writ. The Court of Appeals transferred the case to this court pur-

suant to RCW 2.06.030 (d). One of petitioners' claims is that this suit was improperly brought because the authorization for it was obtained at a school board meeting held in violation of RCW 42.30, the Open Public Meetings Act of 1971. We find this contention to be meritorious and determinative, and therefore reverse the trial court's refusal to dismiss the case.

On April 26, 1974, the teacher-members of the Mead Education Association walked off the job in support of its demands in contract negotiations with the school district. The district schools were substantially shut down. Picketing was begun, and some bus drivers, garbage collectors and custodial personnel refused to cross the lines onto the school grounds. Simultaneously, the board of directors of the district held a special meeting at which it authorized, in executive session, legal action against the strike and its related activities. A suit seeking an injunction was filed that same day, and an agreed order was entered into which restricted the activities of the association and its members in order to allow for protection and maintenance of the schools.[1]

On Monday, April 29, 1974, a hearing was held in Superior Court for Spokane County. There the defendant association and teachers moved to quash the complaint on the grounds that the resolution authorizing the suit was void because it was passed at a meeting held in violation of the notice and public admission requirements of the Open Public Meetings Act of 1971, RCW 42.30. The trial court

---

[1]"The parties stipulated that the defts [sic] will not interfere with: at least one custodial and maintenance classified employee per shift per school or building, who wish to enter or leave for purposes of protection of District property or necessary maintenance thereof; at least one administrator or principal per school or building; guards or watchmen stationed in buildings, nor with any outside contractors or repairmen for district equipment. Picketing shall occur only between 6 A.M. to 3:30 P.M. on school days until disposition of the motion for temp restr [sic] order. The defendants will not interfere with any person entering or leaving district property for any purpose, peaceful picketing will not be considered interference. This stipulation shall be effective until disposition of the motion for temporary restraining order."

granted the motion, holding the executive session in which the suit was authorized was improper under RCW 42.30.030 and RCW 42.30.060 because it was closed to the public.

At 6 o'clock Monday evening the chairman of the board of directors of the district notified its other members that a special meeting would be held at 6:45 p.m. Some notice of the meeting was apparently given the public and the media, and "at least one" member of the public was present when it was held. The meeting lasted for only a few minutes, and consisted exclusively of the passage of another resolution authorizing court action against the striking teachers. A new action was filed the next day, Tuesday, April 30. The agreed order was reinstated and the previous record incorporated into the present one by stipulation. Defendants again moved to dismiss the suit as improperly authorized, but this time the court denied the motion. The court then went on to hear testimony and argument on the merits of the suit, and ultimately issued the temporary injunction of the strike which petitioners challenge here. The correctness of this refusal to dismiss is the threshold question presented by their appeal.

■ The meeting of April 29 was not scheduled, its date was not previously fixed by law or rule, and it was therefore a "special meeting" within RCW 42.30.080, part of the Open Public Meetings Act of 1971.[2] That section requires written notice to be given to the members of a public agency and the media 24 hours prior to the holding of an unscheduled meeting, but it allows such notice to be dispensed with "in the event a special meeting is called to deal with an emergency involving injury or damage to persons or property or the likelihood of such injury or damage, when time requirements of such notice would make notice impractical and increase the likelihood of such injury or damage." There is no contention that the meeting was not

[2]School districts are "public agencies" and the passage of a resolution is an "action" which makes a meeting of such an agency subject to the Open Public Meetings Act of 1971.

subject to the requirements of this section. Rather the board argues, and the trial court held, that the teachers' strike presented the district board with an "emergency" allowing it to meet without the otherwise required 24-hour notice under the quoted proviso. We do not agree.

The district has put forth two categories of injury to rights and property which it contends were threatened by the strike, producing an "emergency." First, it argues that the refusal of some maintenance and sanitation workers to cross the MEA picket lines created a danger of damage to heating facilities which were in need of constant maintenance and a health hazard. This contention ignores, however, the agreed order, which was designed to guarantee that just these needs were met, and with which, it is apparently conceded, the strikers complied. The strike continued for a week, and there is no indication in the record that the district's schools suffered any physical damage or developed any sanitation problem. Recognizing this, the district emphasizes instead a second type of "injury": the disruption of the functioning of the schools and the attendant dislocation of the expectations and plans of students and their families. This appears to be the harm that most concerned the district board members and resulted in their precipitant action. The board chairman testified that, to him "[t]he emergency was simply that the educational process within the Mead School District had come to more or less of a halt."

The central question presented to us, then, is whether the threat of such intangible "injuries" is sufficient to create an "emergency" within the meaning of RCW 42.30.080. Respondent urges strongly that in many other areas of the law, "injury" includes more than physical damage and connotes as well deprivation of intangible legal rights and interests. The operative word in the exception to RCW 42.30.080 is not "injury," however, but "emergency." *Webster's Third New International Dictionary* defines "emergency" as "an unforeseen combination of circumstances or

the resulting state that calls for immediate action." The situation facing the Mead School District on April 29 would seem to fit this general description. But the legal definition of an "emergency" is somewhat narrower. In reviewing "emergency" enacting clauses to legislation we have emphasized that the word "does not mean expediency, convenience or best interest" and " 'promotion of the public welfare' is not a criterion . . . in determining whether or not an emergency exists." *State ex rel. Gray v. Martin*, 29 Wn.2d 799, 806-07, 189 P.2d 637 (1948).

■ The context and history of RCW 42.30.080 indicate that the "emergency" it contemplates is a severe one. The term is used in the parallel provision of RCW 42.30.070, which permits notice of scheduled meetings to be dispensed with in case of "fire, flood, earthquake, or other emergency . . ." The reference in RCW 42.30.080 is similar. Its emergency exception was not included in the original version of the Open Public Meetings Act of 1971 submitted in the Senate. S. Jour. 704 (1971). It was added in response to the concern of several legislators that the notice requirement would be unworkable and unjustified in unusual circumstances. This difficulty was first expressed in debate on the Senate floor by Senator Scott, who noted that the restriction of business to matters mentioned in prior notices might hamstring agencies in their ability to respond expeditiously to unexpected developments:

> If you have an emergent situation, *and I use the instance of a public utility district operation where you had a flash flood*, you would not be able to bring that up . . .

(Italics ours.) S. Jour. 705 (1971).

Respondent's emphasis on the breadth of meaning given the word "injury" in many cases is misplaced. The phrase "involving injury or damage to persons or property" is not designed to expand the emergency clause but to confine it. Under respondent's interpretation of the word "injury" as including any violation of legal rights, the words "to persons or property" would have no meaning. These preposi-

tional modifiers were included to even further limit the scope of the emergency exception. They connote physical, not merely legal, damage, or the threat thereof.

In order to dispense with the notice required by RCW 42.30.080, therefore, an emergency must exist which involves or threatens physical damage. The circumstances must be unexpected and must call so urgently for action that even the 1-day delay the notice entails would substantially increase a likelihood of such injuries. The situation facing the Mead School District Board when it was called to meet on April 29, 1974, was not this kind of emergency.

■ This constricted reading of the exception to the notice requirement of RCW 42.30.080 is justified, we believe, in light of the remedial purpose of the Open Public Meetings Act of 1971. RCW 42.30.910. The legislative command that the coverage of the act's provisions be "liberally construed" implies a concomitant intent that its exceptions be narrowly confined. The act is intended to guarantee public access to and participation in the activities of their representative agencies. RCW 42.30.010. The decisions of governmental bodies are usually important and the circumstances in which they are made are often pressing. Were we to allow them to escape public scrutiny by the simple expedient of declaring the situations they face emergent, we would subject the act's requirements to the whim of the public officials whose activities it is designed to regulate.

RCW 42.30.060 provides that any action taken at a meeting held without the required notice being given "shall be null and void." The resolution passed at the meeting of April 29 is therefore legally nonexistent and the suit for injunction was unauthorized. The parties concede, and the trial court ruled in its dismissal of the first suit, that the lack of authorization requires the dismissal of the action. Such a result is supported both by the consideration that the violation of the Open Public Meetings Act of 1971 should not be without consequence, and by prior law regarding the bringing of suits in the names of corporations,

for which authorization is required, although it is ordinarily presumed. *Goodale Phonograph Co. v. Valentine,* 69 Wash. 263, 266, 124 P. 691 (1912). *Cf. Redfield v. Wharton,* 79 S.D. 557, 115 N.W.2d 329 (1962).

The motion to quash the complaint should, for these reasons, have been granted, and would have been had the trial court not ruled erroneously on the applicability of the "emergency" exception to RCW 42.30.080. It is not necessary, therefore, for us to reach the other questions raised by the later issuance of a temporary injunction against the strike. Those may await a later case in which the jurisdiction of a court is properly invoked.

The decision of the trial court is reversed.

HALE, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, and BRACHTENBACH, JJ., concur.

[No. 43416.    En Banc.    January 10, 1975.]