[No. 13542–6–II.   Division Two.   April 23, 1991.]

JEAN A. SCHMITT, ET AL, *Appellants,* v. CAPE
GEORGE SEWER DISTRICT No. 1, ET AL,
*Respondents.*

2

*William H. Broughton* and *Hiscock & Barclay,* for appellants.

*Rod P. Kaseguma* and *Inslee, Best, Doezie & Ryder, P.S.,* for respondents.

ALEXANDER, J.—Jean and William Schmitt and Lili and Milton Foss appeal a judgment of the Jefferson County Superior Court declaring that a Utility Local Improvement District (ULID) was validly created. They contend on appeal that the trial court erred in concluding that commissioners of the Cape George Sewer District (1) had the power to exclude from their calculations certain land within the boundaries of a proposed ULID when determining the sufficiency of the petition to create the ULID; and (2) did not violate the Open Public Meetings Act of 1971. We reverse.

The facts are not in dispute. The Schmitts and the Fosses reside within the Cape George Sewer District in Jefferson County. In 1988, the District's commissioners attempted to form a ULID by a resolution of the commission. The attempt was defeated by a protest petition spearheaded by the Schmitts and the Fosses.[1]

In early 1989, a petition to form a ULID was presented to the Sewer District commissioners by some of the residents of the District. At a nonscheduled meeting of the commission on February 28, 1989, the commissioners met and discussed guidelines for verifying signatures on the petition to form the ULID and the manner for determining if the petition contained the signatures of a statutorily sufficient number of landowners within the proposed ULID. See RCW 56.20.020. Three days later, at a regularly scheduled meeting of the commission, the commissioners passed a "Resolution of Intention" to form a ULID. The proposed ULID included land owned by the Cape George Colony Club, Inc., a nonprofit corporation. In determining that the petition contained the requisite signatures of owners of 51 percent, or more, of the land area within the proposed district, the commissioners excluded the Club's common areas and roads from their calculations. After excluding these areas, the commissioners concluded that the petition contained signatures of owners of 54.1 percent of the land within the proposed ULID. It is agreed that if all of Cape George Colony's land had been included in the calculations, the percentage would have been 41 percent. After several more public meetings, the commissioners adopted a resolution creating the ULID.

---

[1]RCW 56.20.030 provides, in pertinent part:

"The jurisdiction of the commissioners to proceed with any improvement initiated by resolution shall be divested: (a) by protests filed with the secretary of the board before the public hearing signed by the owners, according to the records of the county auditor, of at least forty percent of the area of land within the proposed local district . . .."

The Schmitts and the Fosses appealed the commissioners' decision to the Jefferson County Superior Court, asserting that the commissioners' actions should be overturned because of violations of the Open Public Meetings Act of 1971 and because the commissioners erred in determining that owners of 51 percent, or more, of the land area within the proposed ULID had signed the petition.[2] The Superior Court, after a hearing, affirmed the commissioners' action.

We are confronted with essentially two issues: (1) was the ULID validly created? (2) Are the Schmitts and the Fosses entitled to attorney's fees based on their claim that the Open Public Meetings Act of 1971 was violated?

■■ Appellate court review of an administrative decision is made on the record of the administrative tribunal itself, not on that of the superior court. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 323–24, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983). Issues of law are reviewed de novo under the error of law standard. This standard allows the reviewing court to essentially substitute its judgment for that of the administrative body. However, substantial weight is given to the agency's view of the law. *Franklin Cy. Sheriff's Office,* 97 Wn.2d at 325.

The Schmitts and the Fosses argue that pursuant to RCW 56.20.020, *all* of the area of land within a proposed ULID must be included when the commissioners determine whether or not the petition contained signatures of the requisite number of landowners within the proposed ULID.

---

[2]The Schmitts and the Fosses had previously filed an action against the District in the Jefferson County Superior Court in which they sought damages and an injunction. They contended in that suit that the commissioners should be barred from taking the next step in the ULID process until a valid public meeting was held. The court concluded that the Open Public Meetings Act of 1971 did not provide a basis for granting a preliminary injunction. Nevertheless, because of what it believed were violations of the public disclosure act, it granted a preliminary injunction which had the effect of continuing a public meeting, scheduled for April 4, 1989, for an additional 14 days.

They contend that in making their decision, the commissioners did not comply with RCW 56.20.020, and, therefore, the ULID was invalidly created.

RCW 56.20.020 provides, in pertinent part:

Utility local improvement districts . . . may be initiated either by resolution of the board of sewer commissioners or *by petition signed by the owners according to the records of the office of the county auditor of at least fifty–one percent of the area of the land within the limits of the utility local improvement district to be created.* . . .

(Italics ours.)

We must first ask if the commissioners had authority under this statute to exclude certain lands within the proposed ULID from their calculations. Interpretation of a statute is a matter of law subject to independent appellate review. *Washington Fed'n of State Employees v. State Personnel Bd.*, 54 Wn. App. 305, 773 P.2d 421 (1989). A grant of authority is derived from express statutory authorization or, alternatively, by implication. *Chemical Bank v. WPPSS*, 99 Wn.2d 772, 666 P.2d 329 (1983), *cert. denied*, 471 U.S. 1075, 85 L. Ed. 2d 497, 105 S. Ct. 2154 (1985). It is apparent to us, from a plain reading of RCW 56.20.020, that the commissioners did not have explicit statutory authority to do what they did.

Neither can such authority be implied. The test for necessary or implied municipal power is legal necessity rather than practical necessity. *Chemical Bank*, 99 Wn.2d at 792 (citing *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 650 P.2d 193 (1982)). To determine whether there is any implied power, the court must look at the entire statutory scheme. *Chemical Bank*, 99 Wn.2d at 782.

All of the parties agree that RCW 56.20.020 is designed to allow citizens to have a voice in the formation of ULID's for which they will be assessed. The commissioners argue that by excluding the common areas and roads owned by the Club from their calculations, only those people who had an interest in the improvement would have a voice in

whether the ULID was to be formed. They contend that the excluded land is like government owned land and therefore may be excluded under the reasoning of *Mullen Benevolent Corp. v. United States,* 290 U.S. 89, 78 L. Ed. 192, 54 S. Ct. 38 (1933); *State v. Olympia,* 171 Wash. 594, 18 P.2d 848 (1933); *Spokane v. Security Sav. Soc'y,* 46 Wash. 150, 89 P. 466 (1907). Our reading of these cases is that they simply do not apply to the statute with which we are here concerned. Moreover, the commissioners cite no cases for the proposition that privately owned common areas are equivalent to public land. We, thus, reject the argument.

The formation of ULID's is under the control of the landowners only at the initiation stage. Landowners can force the commission into adopting a resolution to form a ULID by using the petition method, or they can prevent the commissioners from forming a ULID by using the protest procedure.[3] Once a resolution of intent has been validly passed and no protest has been successful, however, landowner control over whether a ULID is formed is effectively at an end.[4] If the commissioners are permitted to exclude land from the calculations necessary to determine if the requisite number of landowners have signed a petition for formation of a ULID, they can seriously lessen the ability of landowners to control whether or not a ULID, for which they may be assessed, will be formed. The statute plainly requires that a ULID initiation petition must be signed by owners "of at least fifty–one percent of the area of the [affected] land." In the face of this language and its evident purpose, we cannot identify any implied power to exclude land within the boundaries of the proposed ULID.

Because there is no express or implied authorization to exclude any land from the calculations that determine

---

[3]The protest procedure is only available if the formation process has been initiated by the commissioners. RCW 56.20.030.

[4]Although citizens can still voice their opposition at the required public hearing, the statute gives the commissioners the power to overrule further protests and proceed with the improvement and levy assessments. RCW 56.20.030.

whether or not the petition contained the requisite number of signatures of landowners, we hold that the commissioners wrongly concluded that the petition contained the signatures of the owners of 51 percent or more of the land within the proposed ULID. The ULID was, therefore, invalidly created.

The Schmitts and Fosses request attorney fees claiming that the District violated RCW 42.30.120(2), the Open Public Meetings Act of 1971, which provides:

> Any person who prevails against a public agency in any action in the courts for a violation of this chapter shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action.

The Schmitts and Fosses argue that some type of action was taken during the nonscheduled meeting of February 28, which rendered the resolution passed at the March 1, 1989, open meeting invalid.

RCW 42.30.060(1) provides:

> No governing body of a public agency shall adopt any ordinance, resolution, rule, regulation, order, or directive, except in a meeting open to the public and then only at a meeting, the date of which is fixed by law or rule, or at a meeting of which notice has been given according to the provisions of this chapter. *Any action taken at meetings failing to comply with the provisions of this subsection shall be null and void.*

(Italics ours.)

Although it appears that some discussion occurred at the February 28 meeting about the formation of the ULID, the commissioners took no formal action at that meeting. Instead, the resolution of intent to form the ULID was passed at the scheduled open meeting of March 1, 1989. Because the commissioners took no action at the February 28 meeting, there is no entitlement for fees based on a violation of the act. The request for fees is denied.

Reversed.

WORSWICK, C.J., and PETRICH, J., concur.

Reconsideration denied July 8, 1991.