979 P.2d 429 (1999)
138 Wash.2d 318
Cheryl MILLER, Appellant,
v.
CITY OF TACOMA, a municipal corporation, Robin S. Jenkinson, in her capacity as Tacoma City Attorney, and Harold G. Moss, Mayor, Robert W. Evans, Deputy Mayor and Councilmember, William Baarsma, Councilmember, Paul E. Miller, Councilmember, Delores I. Silas, Councilmember, Sharon M. McGavick, Councilmember, David Deforrest, Councilmember, Steve Kirby, Councilmember and Mike Crowley, Councilmember, Respondents.
No. 65597-9.
Supreme Court of Washington, En Banc.
Argued February 25, 1999.
Decided July 1, 1999.
*431 David Minikel, Lakewood, for Appellant.
John C. Kouklis, Asst. Tacoma City Atty., Tacoma, for Respondents.
*430 SANDERS, J.
We accepted direct review from a judgment dismissing the plaintiff's complaint alleging the Tacoma City Council violated the Open Public Meetings Act of 1971 (RCW 42.30). The issues presented are: (1) whether there is substantial evidence to support the challenged factual findings of the trial court; (2) whether the council violated the Open Public Meetings Act by conducting a series of ballots in executive session to arrive at a consensus candidate for appointment to the Tacoma City Planning Commission; and (3), if the Open Public Meetings Act was violated, whether Tacoma city council members are subject to a civil penalty under RCW 42.30.120(1) for a knowing violation. We conclude the factual findings of the trial court are supported by substantial evidence and, based on those findings, we further conclude the Open Public Meetings Act was violated by Tacoma City Council, but the council members are not subject to a civil penalty under RCW 42.30.120(1) because this violation was unknowing. We therefore reverse the judgment of the trial court and remand for an award of reasonable attorney fees and costs.

I.

FACTS
The Tacoma City Planning Commission (the planning commission) is a public body created by the Tacoma city charter charged with advising the council about zoning, land use, and environmental matters. Appointees to the commission are uncompensated. In 1995 a position on the planning commission became vacant.
Miller and three other candidates were interviewed by the appointments committee of the Tacoma City Council (the council) for the position on the planning commission. Although the appointments committee initially voted 3-0 to recommend Miller for the position, the committee eventually made no recommendation and referred the candidates for interview by the full council. The four candidates for the position were interviewed by the full city council at a regularly scheduled meeting on June 6, 1995. One of the candidates withdrew at the meeting and urged support for Miller.
Following an interview with the candidates the council asked the city attorney about the propriety of going into executive session to evaluate the qualifications of the candidates to the planning commission. The city attorney assured the council that it was appropriate to consider the qualifications of the candidates in executive session. The mayor then announced that the council was retiring to executive session "for the purpose of discussing qualifications of an uncompensated public employee." Clerk's Papers (CP) at 6.
During the executive session sheets of paper were passed out which had the names of the three candidates (Miller, Thompson, and Salter) printed thereon. Each council member placed a mark beside the name of his or her preferred candidate. The papers were collected and the results tallied on a white board. There were three rounds of secret ballots. After the initial round, the result was tabulated as Miller-3, Thompson-3, and Salter-3. In the second round the result was Miller-4, Thompson-3, and Salter-2, and in the third round the result was Thompson-6 and Miller-3. Following completion of the third round of secret ballots, the executive session was concluded. The trial court found the council members "believed that they were acting appropriately under the law" during the course of the executive session. CP at 284 (finding of fact 10).
That same evening, immediately after the executive session, the council returned to an open meeting. A motion was made and seconded to direct the city manager to present a resolution at the following week's council meeting to appoint Thompson to the planning commission. That motion carried with three council members not participating.
Prior to the next council meeting, scheduled for June 13, 1995, an administrative assistant in the clerk's office sent a letter to *432 Thompson congratulating him on his selection for appointment to the planning commission and thanking Miller for applying for the position.
On June 13, 1995, at the following week's council meeting, the requested resolution appeared on the council agenda to appoint Thompson to the planning commission. Although alternative resolutions were available to appoint either plaintiff Miller or candidate Salter, the council adopted the resolution appointing Thompson by a vote of 9-0. Thompson was thus appointed to the planning commission.
Miller sued the City of Tacoma and the council members for violating the Open Public Meetings Act. After a bench trial the court concluded the council did not violate the act by conducting secret ballots during the executive session. The trial court further factually found even if the council members violated the act, they did so unknowingly and therefore were not subject to a civil penalty. Miller appealed directly to this court. We accepted direct review.

II.

ANALYSIS
A. Substantial evidence supports the trial court findings of fact which are challenged on appeal.
The appellant assigns error to several of the trial court's findings. However an appellate court will uphold the trial court's factual findings as long as they are supported by substantial evidence. Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 819, 828 P.2d 549 (1992) ("Findings of fact supported by substantial evidence are verities on appeal."). The test of substantial evidence is whether there is "evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Robinson v. Safeway Stores, Inc., 113 Wash.2d 154, 157, 776 P.2d 676 (1989) (quoting Holland v. Boeing Co., 90 Wash.2d 384, 390-91, 583 P.2d 621 (1978)). Review of the findings is therefore limited to examining the record to establish whether there is substantial evidence to support each challenged finding. As we conclude that such is the case, the challenged findings are verities for the purpose of this appeal.
B. Tacoma City Council violated the Open Public Meetings Act when it conducted a series of secret ballots in executive session to arrive at a consensus candidate for appointment to the planning commission.
Miller argues the city council violated the Open Public Meetings Act (RCW 42.30) because this executive session did not fit within that exception to the act which permits consideration of the qualifications of candidates for public employment outside a public meeting. In particular Miller argues the exception under RCW 42.30.110(1)(g) for evaluation in executive session of qualifications of applicants for public employment does not apply because positions on the planning commission are unpaid. Miller further argues even if the executive session was permitted under RCW 42.30.110(1)(g), balloting of council members was not permitted by the statutory exemption and should have been accomplished in public.
The City of Tacoma argues the council had a right under RCW 42.30.110(1)(g) to go into executive session to evaluate the qualifications of applicants for appointment to the planning commission. It further argues although the balloting was "action," it was not "final action" as defined by the act and therefore was not required to take place in public.
The parties agree the Open Public Meetings Act applies to the city council.[1] The purpose of the act is to ensure public bodies make decisions openly:
The legislature finds and declares that all public commissions, boards, councils, committees, subcommittees, departments, divisions, offices, and all other public agencies *433 of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.
The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.
RCW 42.30.010.
The act also mandates a liberal construction. RCW 42.30.910 ("[t]he purposes of this chapter are hereby declared remedial and shall be liberally construed"). Liberal construction of a statute "implies a concomitant intent that its exceptions be narrowly confined." Mead Sch. Dist. No. 354 v. Mead Ed. Ass'n, 85 Wash.2d 140, 145, 530 P.2d 302 (1975).
The act states the general rule that:
[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency, except as otherwise provided in this chapter.
RCW 42.30.030. Pursuant to this general rule the act requires all "meetings" be open to the public unless one of the act's exceptions applies. To analyze compliance with the act in the present case, we must therefore consider whether (1) the executive session falls within the definition of "meeting" under the act, and (2), if so, whether one of the act's exceptions applies.
1. The executive session was a "meeting" covered by the Open Public Meetings Act.
"Meeting" is defined as "meetings at which action is taken" (RCW 42.30.020(4)). "Action" is defined as:
the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions.
RCW 42.30.020(3) (emphasis added).
The parties agree the city council took "action" in the executive session that is the subject of this appeal. Br. of Appellant at 17-24 (arguing the use of ballots in the executive session was "final action," which is included in the act's definition of "action" under RCW 42.30.020(3)); Br. of Resp'ts at 27 ("The City Council took `action,' but it did not take `final action' in executive session"). Therefore the executive session was a "meeting" subject to the Open Public Meetings Act requiring it to be open to the public unless it satisfied one of the act's exceptions.
2. Balloting in an executive session to arrive at a consensus candidate for public employment is not exempt.
The act provides exceptions to the general rule that meetings must be open to the public, including the following:
Nothing contained in this chapter may be construed to prevent a governing body from holding an executive session during a regular or special meeting:
....
(g) To evaluate the qualifications of an applicant for public employment or to review the performance of a public employee. However, subject to RCW 42.30.140(4), discussion by a governing body of salaries, wages, and other conditions of employment to be generally applied within the agency shall occur in a meeting open to the public, and when a governing body elects to take final action hiring, setting the salary of an individual employee or class of employees, or discharging or disciplining an employee, that action shall be taken in a meeting open to the public[.]
RCW 42.30.110(1) (emphasis added).
The central question in this appeal is whether RCW 42.30.110(1)(g) permitted the city council to retire to executive session and then ballot its members. For this to be exempt from the open meeting requirement two criteria must be satisfied: (1) the conduct of a secret ballot must be an "evaluation" *434 for the purpose of the exception and (2) the applicants for this unpaid position must be applicants for "public employment." As we conclude balloting is not an "evaluation," we hold the meeting was not exempt, and therefore do not address the second factor.
Tacoma argues the city council was entitled to conduct ballots in executive session because this was "action" (as opposed to "final action") under RCW 42.30.020(3). Br. of Resp'ts at 16. This argument parallels the conclusion of the trial court:
The City Council was authorized to take "action" in Executive Session, pursuant to RCW 42.30.020(3), including, but not limited to, deliberations, discussions, considerations, reviews, and evaluations of the candidates for appointment to the Planning Commission.
CP at 285 (conclusion of law 4).
However Tacoma's argument (and the trial court's conclusion) involves an inherent misreading of the operation of the Open Public Meetings Act and its exceptions. The argument the council could take "action" in executive session not only fails to give effect to the act's mandate for liberal interpretation, but in fact implicitly reverses the fundamental premise of the act that all "action" must be taken at meetings open to the public. RCW 42.30.030. RCW 42.30.020(3) does not authorize action to be taken in executive session, as the trial court suggests, but rather provides a broad definition of "action." Contrary to the trial court's conclusion, the act's general rule is that "action" must be taken in an open meeting (RCW 42.30.030; RCW 42.30.020(4)); whereas one of the act's exceptions must be triggered before an executive session may be convened.
Although the Tacoma City Council was entitled to go into executive session to evaluate the qualifications of applicants for public employment under RCW 42.30.110(1)(g), once in executive session the council was not immunized from the provisions of the Open Public Meetings Act. For the council to comply with the act it was required to limit its action in executive session to that authorized by the relevant exception. This accords with the mandate for liberal interpretation of the act contained in RCW 42.30.910 and the consequent narrow construction of exceptions to the general rule. Mead Sch. Dist. No. 354, 85 Wash.2d at 145, 530 P.2d 302. Although RCW 42.30.110(1)(g) specifically states "when a governing body elects to take final action hiring ... that action shall be taken in a meeting open to the public," the rule that exceptions to the act must be narrowly interpreted, if not the plain language of the statute, prevents the conclusion that all action other than "final action" is permitted in executive session. Instead, only the action explicitly specified by the exception may take place in executive session. Therefore in the present case the council in executive session could only "evaluate the qualifications" of the applicants for public employment: any action taken beyond the scope of the exception violated the act.
As the word "evaluate" is not defined in the statute, the dictionary may be consulted. State v. Belgarde, 119 Wash.2d 711, 716, 837 P.2d 599 (1992) ("when a statutory term is undefined, dictionaries may be consulted to determine its meaning."). The definition of "evaluate" is "to examine and judge concerning the worth, quality, significance, amount, degree, or condition of." Webster's Third New International Dictionary 786 (1981). In the context of RCW 42.30.110(1)(g), the verb "evaluate" applies to the applicant's qualifications. Reading the exception in 42.30.110(1)(g) narrowly and in accordance with the purposes of the act, it is clear the council could discuss and consider the worth, quality and significance of the applicants' qualifications, and individual council members could express their opinions on such matters, but they could not choose a candidate. Here the council conducted a secret ballot. This did not weigh or evaluate the qualifications of the applicants, but identified a consensus candidate for appointment to the planning commission. As such, these secret ballots constituted "action" beyond mere evaluation of the candidates' qualifications and therefore fell outside the scope of the RCW 42.30.110(1)(g) exception.
Because the balloting procedure employed by the council fell outside the exclusion provided by RCW 42.30.110(1)(g), it should have *435 been conducted in a meeting open to the public. The trial court's conclusion of law 4 that the council was entitled to take "action" in executive session was error.
For the purposes of the present case it is unnecessary to determine whether the action of taking ballots amounted to "final action" under the statute as a violation of the act occurred because the balloting constituted "action" which went beyond the scope of the exception provided by RCW 42.30.110(1)(g). However as the arguments of the parties focused on whether the balloting amounted to "final action" in terms of the statute, we will also address that issue.
RCW 42.30.110(1)(g) explicitly provides that "final action hiring" must take place in public. The act states:
"Final action" means a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance.
RCW 42.30.020(3).
Tacoma argues courts have interpreted the term "final action" narrowly, and that in the present case the action taken by city council in executive session was not "final action." Tacoma relies on three cases: Organization To Preserve Agric. Lands [Opal] v. Adams County, 128 Wash.2d 869, 881-84, 913 P.2d 793 (1996), Schmitt v. Cape George Sewer Dist. No. 1, 61 Wash.App. 1, 809 P.2d 217 (1991) and Slaughter v. Snohomish County Fire Protection Dist. No.20, 50 Wash.App. 733, 750 P.2d 656 (1988).
In Opal v. Adams County it was argued two commissioners violated the Open Public Meetings Act by discussing over the telephone a proposal to issue an unclassified use permit (UUP) for a solid waste landfill and recycling facility and agreeing how they would vote at the subsequent public meeting. Perusing cases cited in support of that argument, this court was "particularly persuaded" by a Florida case which held invalidation of a formal action was not required by the Florida open meetings act merely because there had been prior informal discussions. Tolar v. School Bd. of Liberty County, 398 So.2d 427, 428 (Fla.1981). Referring to Tolar, we stated:
In so holding, the [Florida] court distinguished the case before it, in which the opposing party was given a full opportunity to express his views in a public meeting, from cases in which formal action is merely summary approval of decisions made in numerous and detailed secret meetings. Given the extensive opportunity for input by opposing parties in this case, we agree with the trial court that invalidation of the UUP decision is not warranted merely because two of the commissioners discussed in private who should make the motion to issue the UUP.
Opal, 128 Wash.2d at 884, 913 P.2d 793 (citations omitted) (emphasis added). Opal recognizes in obiter dictum that decisions taken in secret meetings may constitute "final action" even though there is subsequent formal approval of the decision in a public meeting. However Opal is distinguishable from the present case because Opal involved informal discussions between only two commissioners whereas in the present case there was a formal meeting of the council in executive session where all council members were balloted until a consensus was reached.
The other two cases relied on by Tacoma, Schmitt v. Cape George Sewer Dist. No. 1, 61 Wash.App. 1, 809 P.2d 217 and Slaughter v. Snohomish County Fire Protection Dist. No. 20, 50 Wash.App. 733, 750 P.2d 656, are inapplicable. In neither Schmitt nor Slaughter was the Court of Appeals considering exceptions to the act under RCW 42.30.110, but rather RCW 42.30.060(1), a provision of the act which requires an "ordinance, resolution, rule, regulation, order, or directive" must be adopted at a public meeting which has been scheduled in accordance with the provisions of the act. Schmitt and Slaughter, however, do not define "final action" under the act.
The statutory definition of "final action" must control. That definition consists of two parts, either: (1) "a collective positive or negative decision," or (2) "an actual vote by a majority of the members of a governing body when sitting as a body or entity" when either follows "a motion, proposal, *436 resolution, order, or ordinance." RCW 42.30.020(3). The definition does not rule out the legal possibility that the chosen course of action might be altered at a subsequent date, as is arguably the case here.
Here the city council took "final action" as that term is used in the statute. RCW 42.30.020(3). In executive session council members balloted until a consensus was reached on the best candidate, whereupon the executive session was terminated. Thus "a collective positive or negative decision" was reached satisfying the first part of the definition of "final action" in RCW 42.30.020(3), in addition to "an actual vote by a majority of the members of a governing body when sitting as a body or entity" satisfying the second part of the definition. Although no formal motion was made or adopted in the executive session, CP at 284 (finding of fact 8), "final action" is not limited to a formal motion, but also clearly covers informal proposals. The balloting conducted in executive session was upon at least an informal proposal as evidenced by the distribution of ballot sheets and tallying of votes. The council's action therefore meets the statutory definition of "final action" under RCW 42.30.020(3) because there was a collective decision made by an actual vote on at least an informal proposal.
The flaw in the council's argument is that it fails to recognize "final action" may occur without a formal motion. "Final action" as defined in RCW 42.30.020(3) does not require a formal motion: it can simply be an informal proposal resulting in a positive or negative decision, or an actual vote. Thus, although in the present case a formal motion was neither made nor adopted in executive session, the balloting of the council constituted "final action" under RCW 42.30.020(3), which explicitly falls outside the scope of the exception provided by RCW 42.30.110(1)(g).
The council therefore violated the Open Public Meetings Act. When the council conducted ballots to arrive at a consensus candidate, it went beyond the scope of RCW 42.30.110(1)(g) that allows for an executive session only to "evaluate" candidates' qualifications. The balloting was at minimum an "action" which should have occurred in a public meeting. However in addition the balloting was also "a collective positive or negative decision" and a vote upon an informal proposal, therefore constituting "final action" as well. "Action" and "final action" must occur in public unless exempt. RCW 42.30.020(3) and (4); RCW 42.30.030. The act specifically states secret balloting may not occur at any meeting which is required to be open to the public. RCW 42.30.060(2).
C. Civil Penalty not justified, reasonable attorney fees are.
The trial court found the council members "believed that they were acting appropriately under the law," CP at 284 (finding of fact 10), when they conducted secret ballots in executive session. They are therefore not subject to a civil penalty pursuant to RCW 42.30.120(1). However Miller is entitled to recover her reasonable attorney's fees and costs both at the trial level and for this appeal. See RAP 18.1(a) ("If applicable law grants to a party the right to recover reasonable attorney fees or expenses on review, the party must request the fees or expenses as provided in this rule..."); RCW 42.30.120(2) ("Any person who prevails against a public agency in any action in the courts for a violation of this chapter shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legalaction."); Protect the Peninsula's Future v. Clallam County, 66 Wash.App. 671, 678, 833 P.2d 406 (1992). We therefore direct the commissioner to determine the amount of the award for this appeal (RAP 18.1(f)), and remand to the trial court to determine the amount of attorney fees and costs otherwise due Miller. Reversed.
GUY, C.J., DURHAM, SMITH, JOHNSON, ALEXANDER, TALMADGE and IRELAND, JJ., concur.
MADSEN, J. (concurring/dissenting)
Because the Tacoma City Council did not take prohibited action in executive session, I disagree with the majority's analysis in this case. However, appellant Cheryl Miller was not an applicant for public employment within the meaning of RCW 42.30.110(1)(g), and *437 therefore the exception permitting evaluation of the qualifications for such applicants in executive session does not apply. Accordingly, despite my disagreement with the majority's analysis, I agree with its conclusion that the city council's action violated the Open Public Meetings Act of 1971, RCW 42.30.900.

ADDITIONAL FACTS
The majority is able to reach its result by basing its analysis on an incomplete statement of the facts. Although the majority concludes that substantial evidence supports the trial court's challenged findings of fact, it fails to set forth a key finding which Ms. Miller challenged, as well as other significant findings. Challenged finding of fact 8 states: "No motions were made or adopted in the Executive Session. No Council member was bound by any poll taken in the Executive Session, nor bound as to how he or she would vote upon the appointment resolution." Clerk's Papers (CP) at 284. In addition, unchallenged finding of fact 5 states that "[i]n Executive Session, the Council deliberated on and gave opinions of the three remaining candidates.... As part of the deliberation, the Council members took opinion polls of themselves by marking sheets of paper with the names of candidates printed thereon." CP at 283. Unchallenged finding of fact 9 states that "No Council member was committed as to how they would cast their vote on the resolution for appointment to the Planning Commission at the meeting of June 13, 1995. Some of the members of the City Council changed their minds during the interval between June 6 and June 13, 1995, as to who they would vote to the Planning Commission position." CP at 284. These findings are contrary to the majority's view that the council made a secret decision choosing the final candidate in executive session.
Substantial evidence supports the findings. Council member McGorvick did not recall using paper, but testified that "it wasn't a vote situation[,]" that there was debate and interaction as to the relative qualifications of the candidates, and that there was "a lively discussion." Verbatim Report of Proceedings (RP) at 110. Council member DeForrest testified that they voted in secret, but added that he was not bound by the vote and was open to being lobbied by other members. Mayor Moss testified that without further action after the executive session, there would have been no appointment to the planning commission. He testified that "everyone who had an opinion had the opportunity to speak it and they did[,]" that members expressed pros and cons as to the candidates, that there was no motion before the council, that none of the council members were bound by anything which occurred in the executive session, and that in the week before the June 13, 1995, meeting he was available to be lobbied for his vote on any of the candidates. RP at 42. Council member Miller testified that there was "quite an exchange of comments among Council members." RP at 130. Although he did not recall if all members participated, he recalled that a significant number participated; he described "fairly extensive discussion." Id. He understood the purpose of the executive session was to see if there was a consensus. He testified that no binding action was taken at the executive session, and that there were no motions or resolutions presented or passed at the executive session. He testified that he knew "personally that [he] could change [his] vote at any time up to" the time of the adoption of the resolution appointing Mr. Thompson at the June 13 open meeting. RP at 136. Council member Kirby testified that he was not committed to make any vote at the open meeting held June 13, and that in fact at the last minute he changed his vote. Council member Evans testified that he did not consider "them ballots. It was straw polls or something. We were told in advance and we were told several times during the meeting that they were not votes as such. So, they were, what, records of opinions at the moment, nothing more." RP at 163. He also said that most of the council members expressed their preferences at the executive session, and that the matter was in flux between the time of the executive session and the June 13 meeting. Council member Silas testified that the balloting was an assessment of the applicants to try to ascertain the feelings of the council as to the candidates.
*438 Moreover, the council returned to the open meeting after the executive session, and a motion was made and seconded that a resolution be presented at the next week's council meeting to appoint Thompson to the planning commission. Also, substitute resolutions were prepared in the event that the resolution appointing Mr. Thompson did not pass at the open meeting on June 13, 1995. Further, at that meeting the public was given the opportunity to speak on the resolution. The Mayor asked if there were "[a]ny further questions by members of the Council[,]" and said, "[i]f there are [sic] no further discussion, is there anyone in the audience wishing to speak for or against the resolution before us." CP at 8 (transcribed report of videotaped proceedings). Thereafter, the vote on the resolution appointing Mr. Thompson was taken.
In light of the substantial evidence supporting the findings, there is simply no merit to the conclusion that the council members voted at the executive session to make a final choice of Thompson as the consensus candidate.

ANALYSIS

Whether Prohibited Action Taken During Executive Session
Under RCW 42.30.110(1)(g), the council was authorized to hold an executive session "[t]o evaluate the qualifications of an applicant for public employment or to review the performance of a public employee." Assuming that Ms. Miller was "an applicant for public employment[,]" an issue which the majority does not address, the question is whether the council's action in executive session falls within this exception to the requirement of open public meetings. I believe that it does.
As noted, the facts do not support the majority's conclusion that the council voted at the executive session to choose a final candidate. Instead, as the trial court found, and substantial evidence supports its findings, the members participated in nonbinding opinion polls as part of the deliberations and expression of opinions about the candidates. The members discussed the candidates, gave opinions, and expressed preferences on paper as the discussion ensued and the opinion polls were taken. The council members were not bound by the balloting at the executive meeting and were open to being lobbied during the week before the open meeting. These activities fall squarely within the definition of evaluation advanced by the majority. Majority at 12 (evaluate means "to examine and judge concerning the worth, quality, significance, amount, degree, or condition of"). Moreover, these activities are the kind of deliberation essential to evaluation of the candidates and their qualifications. The council did not engage in prohibited action in the executive session.
Nor did the council engage in final action in the executive session. "`Final action' means a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance." RCW 42.30.020(3). The trial court found that "[n]o motions were made or adopted in the Executive Session." Findings of Fact and Conclusions of Law at 4 (finding of fact 8). As explained above, there is substantial evidence supporting this finding. There was no "actual vote" on any motion, resolution, order, or ordinance. Nor was there any collective positive or negative decision because none of the members was bound by anything that occurred in the executive session. Moreover, at the public meeting held June 13, 1995, there was opportunity for members of the public to speak for or against the resolution appointing Mr. Thompson.
As the Pennsylvania court in Morning Call, Inc. v. Board of Sch. Dirs., 164 Pa. Cmwlth. 263, 270-71, 642 A.2d 619 (1994) reasoned:
Just because a "vote" is taken in executive session does not mean that it is an "official action" as defined under [Pennsylvania's] Sunshine Act. To be a vote constituting official action ... it must be on a matter that commits the agency to a course of conduct. When an agency eliminates candidates in executive session through a "straw vote", that vote is not official action contemplated by the Sunshine *439 Act that must take place in public, but is part of that discussion and deliberation authorized to be conducted at a private executive session, or, as the trial court found, "really nothing more than a further rating and ranking of these non-finalists." Here, the vote required to be taken publicly as envisioned by ... the Sunshine Act is the one that commits the Board to hire a specific person as superintendent.
(Emphasis added.)
Similarly, here, the discussion and balloting in the executive session did not commit the council members to any course of conduct, and constituted part of the rating and ranking of the candidates, i.e., part of the evaluation of the candidates' qualifications.
I would hold, in light of the substantial evidence supporting the trial court's findings, that the council members' conduct in executive session fell within the scope of evaluating the qualifications of the applicants for the planning commission. Therefore, assuming that the applicants were applicants for public employment, the council took no prohibited action during the executive session.

Whether Candidates Were Applicants for Public Employment
In light of its analysis the majority does not (and need not) address the issue whether the applicants for the planning commission were "applicant[s] for public employment" within the meaning of RCW 42.30.110(1)(g). The statute provides that the city council may meet in executive session:
To evaluate the qualifications of an applicant for public employment or to review the performance of a public employee. However, subject to RCW 42.30.140(4), discussion by a governing body of salaries, wages, and other conditions of employment to be generally applied within the agency shall occur in a meeting open to the public, and when a governing body elects to take final action hiring, setting the salary of an individual employee or class of employees, or discharging or disciplining an employee, that action shall be taken in a meeting open to the public[.]
RCW 42.30.110(1)(g). The issue here is whether a candidate for a position on the planning commission is "an applicant for public employment." The planning commission is a public body that advises the city council on zoning, land use and environmental matters, and its members serve without compensation. The statute is not clear whether uncompensated members of public, advisory commissions fall within RCW 42.30.110(1)(g). This is because it is possible to read the statute as encompassing only those who are applying for public employment which will be compensated, as a public employee, or to read it in a broader sense as referring to applicants for positions involving time-consuming activity of a public nature. Accordingly, well-settled principles of statutory construction provide the framework for deciding the scope of the exception.
Where a statute is susceptible to more than one meaning, the court's primary goal is to determine legislative intent. In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 778, 903 P.2d 443 (1995). The overall intent of the Open Public Meetings Act is that governmental bodies take actions openly and conduct deliberations openly. RCW 42.30.010. The act is remedial, and the Legislature has commanded that it be liberally construed. RCW 42.30.910. In accord with the mandate that the act be construed liberally, its exceptions must be narrowly construed. Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n, 85 Wash.2d 140, 145, 530 P.2d 302 (1975); see Marquis v. City of Spokane, 130 Wash.2d 97, 108, 922 P.2d 43 (1996) (statutory mandate of liberal construction requires that the court view with caution any construction which would narrow the coverage of the law).
Turning to RCW 42.30.110(1)(g), an additional relevant principle of statutory construction is that in ascertaining legislative intent, a statute must be read in its entirety and the various provisions read in light of one another. Sehome Park Care Ctr., 127 Wash.2d at 778, 903 P.2d 443; Western Petroleum Importers, Inc. v. Friedt, 127 Wash.2d 420, 428, 899 P.2d 792 (1995). RCW 42.30.110(1)(g) refers to two permitted actions in executive session: evaluation of the qualifications of an "applicant for public employment" *440 and review of the performance of a "public employee." The statute adds a proviso requiring that matters of salaries, wages, other conditions of employment and "final actions" involving "employees" must be made in public. Bearing in mind that construing the statute requires that this court look beyond "the single phrase at issue[,]" Sehome Park Care Ctr., 127 Wash.2d at 778, 903 P.2d 443, consideration of the subsection as a whole leads to the conclusion that it concerns employment issues pertaining to both prospective and current employment of individuals. Before hiring, an applicant is not a "public employee," but is instead an applicant for "public employment." A public agency may review in executive session the performance of one already working as a public employee, and to evaluate in executive session the qualifications of individuals seeking employment. Thus, the same positions are contemplated by the phrases "applicant for public employment" and "public employee." The most common definition of "employee" is: "One who works for an employer; a person working for salary or wages." Black's Law Dictionary 525 (6th ed.1990). RCW 42.30.110(1)(g) concerns compensated positions.
This reading is borne out by the first part of the proviso which concerns the requirement that discussion of "salaries, wages, and other conditions of employment" take place in open public meetings. Id. In RCW 42.30.110(1)(g) the Legislature addressed personnel matters involving prospective and existing employees and defining when and to what extent such matters may be considered in executive session and must be considered in open public meetings.
Other provisions in the statute are also relevant in determining the meaning of RCW 42.30.110(1)(g). RCW 42.30.110(1)(f) provides that a public agency may in executive session "receive and evaluate complaints or charges brought against a public officer or employee." RCW 42.30.110(1)(h) provides a public agency may "evaluate" in executive session "the qualifications of a candidate for appointment to elective office." The Legislature could have referenced "public office" or "public officer" in RCW 42.30.110(g), but did not do so. The uses of different terms in the subsections are significant because the Legislature's use of certain language in one instance but different language in another demonstrates a difference in legislative intent. United Parcel Serv., Inc. v. Department of Revenue, 102 Wash.2d 355, 362, 687 P.2d 186 (1984).
A "public officer" need not be paid a salary or other remuneration. See Oceanographic Comm'n v. O'Brien, 74 Wash.2d 904, 914-15, 447 P.2d 707 (1968). Because a public officer may be uncompensated, omission of "public officers" from RCW 42.30.110(1)(g) is consistent with the scope of the subsection (addressing matters concerning compensated employees). However, it does not follow that RCW 42.30.110(1)(g) does not apply to any and all public offices. A public officer may be a public employee in the sense of having a salary or wages and other conditions of employment. Thus, as used in the statute, while "public employment" and "public employee" would not include individuals applying for or in uncompensated positions, the terms are broad enough to include public officers who are also employees in paid positions. Cf. Hsieh v. Civil Serv. Comm'n, 79 Wash.2d 529, 534-35 n. 2, 488 P.2d 515 (1971) (contrasting general public employment with employment which arises to the status of public office or position).
Principles of statutory construction are tools used to determine the meaning of an enactment when that meaning is not plain from the statutory language, and they strongly favor the conclusion that applicants for the planning commission are not applicants for public employment within the meaning of RCW 42.30.110(1)(g) because they are not applicants for paid positions. The most important guide here, however, is the legislative declaration of intent  that the Open Public Meetings Act is remedial and must be liberally construed to achieve the purpose of public deliberations and decision making in open meetings. In satisfying this legislative declaration of public policy, a statutory provision which does not clearly permit an exception to the requirement of open public meetings should not be construed by this court to provide one. RCW 42.30.110(1)(g) *441 does not appear to encompass positions like membership in the planning commission, much less clearly so.
Planning commission positions are not elective positions, nor are the members compensated. Because the positions are not elective, evaluation in executive session of the qualifications of applicants to the commission is not permitted under RCW 42.30.110(1)(h). Because the members are not compensated as public employees, evaluation in executive session of their qualifications is not permitted under RCW 42.30.110(1)(g). In short, the statutory scheme requires that consideration of applicants to the planning commission occur in open public meetings.
Arguably, there is room to ask why such individuals' qualifications should not be considered in executive session. However, as this court has often observed, it is not the court's province to pass on the wisdom of statutory provisions which must be construed. E.g., Vashon Island Comm. for Self-Government v. Washington State Boundary Review Bd., 127 Wash.2d 759, 773, 903 P.2d 953 (1995); St. Francis Extended Health Care v. Department of Soc. & Health Servs., 115 Wash.2d 690, 707, 801 P.2d 212 (1990); Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997).
In any case, reasons for the distinctions drawn by the statute come to mind. The 1985 amendments divided former RCW 42.30.110(1)(d) into present subsections (f), (g) and (h), and expressly required that the setting of salaries, wages and other conditions of public employment be public. In an opinion predating the amendments, the Court of Appeals noted that the main motivation behind personnel management exceptions to sunshine acts is that a government will be able to operate more efficiently where it can organize and staff in private because it is unrealistic to expect candid criticism in public, given the danger of unintended personal tones. Also, the public's need to know is not so critical as in other areas. Port Townsend Publ'g Co. v. Brown, 18 Wash. App. 80, 84, 567 P.2d 664 (1977) (quotation and citation omitted). When holding that independent contractors are not "public employees" for purposes of an exception in California's sunshine act, the court similarly opined that the Legislature may have concluded that the public interest was not as great "in the case of ordinary employees, whose relationship to the public agency is of a continuing nature, who work under closer supervision, and whose engagement is not likely to entail the same degree of public interest[.]" Rowen v. Santa Clara Unified Sch. Dist., 121 Cal.App.3d 231, 235, 175 Cal.Rptr. 292 (1981).
Similarly, Washington's present scheme permits the evaluation in executive session of the qualifications of those who will become ordinary employees of a public agency. RCW 42.30.110(1)(g). In addition, due to the 1985 amendments it is clear that where a compensated position rises to the status of a public office, RCW 42.30.110(1)(g) authorizes evaluation of applicants' qualifications in executive session, but requires that salary, wage, and other conditions of employment be addressed in public. This serves the goal of the 1985 amendments to assure that setting of salaries be public. See Laws of 1985, ch. 366, § 2; CP at 156-59 (Memorandum from Attorney General's Office describing history of amendments).[1]
RCW 42.30.110(1)(h) permits evaluation of the qualifications of candidates for appointment to elective public office in executive session, and directs that in the case of candidates for appointment to any elected public position, interviews must be conducted in an open public meeting. This subsection necessarily includes evaluations of candidates for appointment to noncompensated elective positions. While the public's interest in evaluation of appointees to elective office is likely greater than it is where public employees in general are involved, the private evaluation allowed by the exception in RCW *442 42.30.110(1)(h) is counterbalanced by the fact that in time the electorate will have the final say on who serves in the office.
The statute does not permit, however, the evaluation in executive session of the qualifications of individuals applying to noncompensated nonelective public positions. The public interest in their activity is apt to be significant. Such individuals may have considerable impact on the course of government activity. Perhaps because they are not ultimately subject to the elective process nor to the strictures generally associated with compensated employment positions, their evaluation and selection must be made in open public meetings. Regardless of the reasons underlying the statutory provisions, it is the Legislature's prerogative to define exceptions to the requirement of open public meetings, and not for this court to create exceptions.[2]

CONCLUSION
I would hold that if RCW 42.30.110(1)(g) applied, the council's actions were within the scope of the exception and no violation of the Open Public Meetings Act occurred. However, for the reasons set forth in this opinion, RCW 42.30.110(1)(g) is inapplicable because applicants for appointment to the planning commission are not "applicant[s] for public employment." Therefore, while I depart from the analysis of the majority, I concur in its result.
NOTES
[1] "Public agency" is defined by the act to include cities (RCW 42.30.020(1)(b)), and "governing body" is defined as "the multimember board, commission, committee, council, or other policy or rule-making body of a public agency, or any committee thereof when the committee acts on behalf of the governing body, conducts hearings, or takes testimony or public comment." RCW 42.30.020(2).
[1] In that a formal Attorney General Opinion construing a statute, while entitled to great weight, is not binding, it follows that an informal interpretation of a statute is less so. See Seattle Bldg. & Constr. Trades Council v. Apprenticeship & Training Council, 129 Wash.2d 787, 803, 920 P.2d 581 (1996). Nevertheless, the memorandum describes history of the 1985 amendments which indicates legislative intent that the fixing of public officers' salaries occur in public.
[2] The Legislature could, of course, amend the statute and provide public agencies with authority to consider in executive session the qualifications of applicants for positions like the Tacoma Planning Commission.