**FEATURE REALTY, INC., a Nevada corporation, Petitioner–Appellant,**

v.

**CITY OF SPOKANE, a municipal corporation, Respondent–Appellee,**

**Spokane Research & Defense Fund, a Washington nonprofit corporation, Respondent–intervenor–Appellee.**

Feature Realty, Inc., a Nevada corporation, Petitioner–Appellant,

v.

City of Spokane, a municipal corporation, Respondent–Appellee,

Spokane Research & Defense Fund, a Washington nonprofit corporation, Respondent–intervenor–Appellee.

Nos. 01–36137, 02–35430.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2003.

Filed June 11, 2003.

Philip A. Talmadge, Talmadge & Stockmeyer PLLC, Tukwila, WA, argued the cause for the appellant. Jens Schmidt and James E. Mountain, Harrang Long Gary Rudnick P.C., Eugene, OR, filed briefs.

David D. Swartling, Mills Meyers Swartling, Seattle, WA, argued the cause and filed a brief for appellee the City of Spokane. Daniel R. Laurence, Mills Meyers Swartling, Seattle, WA, was on the brief.

Stephen K. Eugster, Eugster Law Firm, Spokane, WA, filed a brief on behalf of appellee-intervenor the Spokane Research & Defense Fund.

Before BEEZER, O'SCANNLAIN, Circuit Judges, and BOLTON,[*] District Judge.

## OPINION

O'SCANNLAIN, Circuit Judge.

We are called upon to decide whether a settlement agreement entered into by the Spokane City Council and a property developer violated Washington's Open Public Meetings Act.

### I

In 1992, Mission Springs, Inc. and Feature Realty, Inc. (collectively "Feature Realty") applied for and received permission from the Spokane City Council to build an apartment complex in Spokane, Washington. In 1995, Feature Realty brought suit against the city in Spokane County Superior Court, alleging the city wrongfully refused to issue a grading permit in connection with the property development. The trial court dismissed all claims on summary judgment, but the Washington Su-

---

[*] The Honorable Susan R. Bolton, United States District Court Judge for the District of Arizona, sitting by designation.

preme Court reversed and remanded. *See Mission Springs, Inc. v. City of Spokane,* 134 Wash.2d 947, 954 P.2d 250 (1998). The court held that Feature Realty had stated a cognizable cause of action for wrongful interference in its property rights, and that the members of the city council individually were not immune from liability. *Id.* at 972, 954 P.2d 250. Feature Realty was awarded appellate costs and attorney fees and the case was remanded to the trial court for further proceedings.

On remand, Feature Realty and the Spokane City Council, represented by the city attorney's office, conducted settlement negotiations, and the parties reached a tentative settlement in the fall of 1998. The proposed settlement called for the city to pay Feature Realty's attorney fees, to refund certain permit fees, to install a water system in the development, and to forego future permit fees in excess of $1 million. The city also agreed to issue necessary permits on an expedited basis, and provided for the abandonment of certain public lands to the developers. In exchange, Feature Realty agreed to dismiss the claims made against the city council and individual members of city government in the *Mission Springs* litigation.

A confidential memorandum reciting the terms of the proposed settlement was presented to the city council on October 5, 1998. That day, the city council held a regular legislative session that was open to the public, but the memorandum was not presented at that meeting. Instead, the council members adjourned to an executive session for approximately thirty minutes for the express purpose of discussing whether or not to approve the settlement, after which the city council reconvened in regular (open) legislative session to discuss

other business. At the executive session, the confidential memorandum summarizing the proposed settlement was distributed to city council members. Discussion among city council members regarding the terms of the agreement took place, and then the city attorney asked the city council members if they wanted to approve the settlement. While no actual vote took place, an informal consensus was achieved by "going around the table," whereupon each of the council members indicated their approval of the settlement. No city council member objected to the terms of the proposed settlement.

On October 14, 1998 the parties signed the agreement. Thereafter, Feature Realty dismissed with prejudice its lawsuit against the city and the council members. Prior to dismissing the suit, the Spokane County Superior Court judge received assurances from the city attorney that he had the necessary authority to enter into the agreement. In 2000, however, a dispute arose regarding the extent of the city's obligations under the settlement agreement to construct a water system, and the parties entered into a separate arbitration agreement as provided for in the settlement agreement. The parties could not agree on an arbitrator, and in November 2000, Feature Realty petitioned the Spokane County Superior Court to appoint an arbitrator. The city removed the case to federal district court in December on the basis of diversity of citizenship. *See* 28 U.S.C. § 1441; 28 U.S.C. § 1332.[1]

The city avers that during the course of the district court proceedings, it realized for the first time that its approval of the underlying settlement agreement violated Washington's Open Public Meetings Act ("OPMA"). The city, together with inter-

---

1. Feature Realty is a Nevada corporation, and the Spokane City Council is a "citizen" of Washington for purposes of the diversity stat- ute. *See Moor v. County of Alameda,* 411 U.S. 693, 717–19, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973).

venor Spokane Research & Defense Fund ("SRDF"), moved for summary judgment on the basis that the settlement agreement was null and void pursuant to the OPMA. The district court agreed, and granted summary judgment in favor of the city.

Thereafter, Feature Realty filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(2). Feature Realty contended that it had "newly discovered evidence" that warranted relief. The district court denied the motion on the basis that the evidence Feature Realty relied on was not newly discovered. Feature Realty timely appeals the order granting summary judgment in favor of the city, and the order denying the motion for relief from judgment.[2]

## II

Enacted in 1971, the OPMA is a comprehensive statute, the purpose of which is to ensure that governmental actions take place in public.[3] The legislative declaration provides,

> The legislature finds and declares that all public commissions, boards, committees, departments, divisions, offices, and all other public agencies of this state and subdivisions thereof exist to aid in the conduct of the people's business. It is the intent of this chapter that their actions be taken openly and that their deliberations be conducted openly.
>
> The people of this state do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created.

Wash. Rev.Code § 42.30.010.

The rule is that "[a]ll meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency...." *Id.* § 42.30.030. The statute mandates a liberal construction. *See id.* § 42.30.910 ("The purposes of [the OPMA] are hereby declared remedial and shall be liberally construed.").

There are nine enumerated exceptions to the general rule that government agencies should conduct their business in public, whereby government agencies are privileged under the statute to meet in an executive session that is closed to the public. The exception relevant here provides for closed-door discussions with legal counsel, as follows,

> Nothing contained in [the OPMA] may be construed to prevent a governing body from holding an executive session during a regular or special meeting.... To discuss with legal counsel representing the agency matters relating to agency enforcement actions, or to discuss

---

**2.** Prior to entering final judgment in favor of the city, the district court gave Feature Realty the option of seeking equitable relief in federal district court, or of attempting to reopen the *Mission Springs* litigation in state court to seek equitable relief there. Feature Realty chose the latter course, and subsequently the Spokane County Superior Court granted Feature Realty's application to reopen those proceedings. That case is currently pending trial on Feature Realty's equitable claims against the city.

**3.** We review de novo the district court's decision to grant summary judgment. *Oliver v. Keller,* 289 F.3d 623, 626 (9th Cir.2002). The district court's construction of Washington state law is a purely legal issue reviewed de novo. *Gibson v. County of Riverside,* 132 F.3d 1311, 1312 (9th Cir.1997). We are bound to follow the decisions of a state's highest court in interpreting that state's law. *Olympic Sports Prods., Inc. v. Universal Athletic Sales Co.,* 760 F.2d 910, 913 (9th Cir.1985); *Aydin Corp. v. Loral Corp.,* 718 F.2d 897, 904 (9th Cir.1983).

---

with legal counsel representing the agency litigation or potential litigation to which the agency, the governing body, or a member acting in an official capacity is, or is likely to become, a party, when public knowledge regarding the discussion is likely to result in an adverse legal or financial consequence to the agency.

*Id.* § 42.30.110(1)(i).

The Washington Supreme Court has stated that the liberal rule of construction with respect to the general rule of openness "implies a concomitant intent that its exceptions be narrowly confined." *Miller v. City of Tacoma*, 138 Wash.2d 318, 324, 979 P.2d 429 (1999) (en banc) (quoting *Mead Sch. Dist. No. 354 v. Mead Educ. Ass'n*, 85 Wash.2d 140, 145, 530 P.2d 302 (1975)).

Since Feature Realty concedes that the OPMA applies to the Spokane City Council,[4] and that the council's decision to approve the settlement took place in executive session,[5] and out of the public eye, the issue on appeal boils down to whether or not the city council was entitled to approve the settlement behind closed doors pursuant to the enumerated exception for discussions with legal counsel.

At the outset, however, we are confronted with a dispute over Washington case law, with the city relying on the Washington Supreme Court's decision in *Miller* in support of its contention that the city council's action was null and void, and Feature Realty relying on a court of appeals decision, *Slaughter v. Snohomish Co. Fire Protection Dist. No. 20*, 50 Wash.App. 733, 750 P.2d 656 (1988), in support of its contention that the city council's action was valid.

In *Miller*, a candidate for a position on the Tacoma City Planning Commission sued the city, alleging that the city council's hiring decision, which took place in executive session, violated the Act. 138 Wash.2d at 320, 979 P.2d 429. The city contended that it was entitled to act in executive session pursuant to an exception for evaluation of qualifications of applicants for public employment, Revised Code of Washington § 42.30.110(1)(g). *Id.* at 327, 979 P.2d 429. In considering whether the general rule, or the exception to the general rule, applied, the Supreme Court reasoned as follows,

Pursuant to [the] general rule the act requires all "meetings" be open to the public unless one of the act's exceptions applies. To analyze compliance with the act in the present case, we must therefore consider whether (1) the executive session falls within the definition of

**4.** The OPMA applies to governing bodies of public agencies. *See* Wash. Rev.Code § 42.30.030. A "public agency" is "[a]ny county, city, school district, special purpose district, or other municipal corporation or political subdivision of the state of Washington." *Id.* § 42.30.020(1). A "governing body" is a "multimember board, commission, committee, council, or other policy or rulemaking body of a public agency...." *Id.* § 42.30.020(2). Clearly, the Spokane City Council is a governing body of a public agency. *Cf. Clark v. City of Lakewood*, 259 F.3d 996, 1013–14 (9th Cir.2001) (holding City of Lakewood's planning advisory board is a governing body of a public agency).

**5.** We reject Feature Realty's argument that the city manager was entitled to enter into the settlement agreement on behalf of the city without the city council's approval. This assertion is belied by the express terms of the Spokane City Charter. *See* Spokane, Wa., Code § 115 ("To the extent permitted by law *the council shall have the power* to prescribe the manner, form and time by which the ... the claims for damages against the City ... shall be made, settled and paid.") (emphasis added); *Id.* § 38 ("All written contracts ... of every kind and description to which the city shall be a party shall be executed in the name of the city by the mayor or the manager *under the direction of the city council ....*") (emphasis added).

"meeting" under the act, and (2), if so, whether one of the act's exceptions applies.

*Id.* at 324–25, 979 P.2d 429.

A somewhat different mode of analysis was employed by the court of appeals in *Slaughter.* In that case, a fire-fighter brought suit against a fire district, contending that the closed door decision to discharge him was unlawful because it violated the OPMA. 50 Wash.App. at 736, 750 P.2d 656. Slaughter relied on the second sentence of section 42.30.060(1), which provides that "[a]ny action taken at meetings failing to comply with the provisions of this subsection shall be null and void." The intermediate court rejected that argument,

> [T]hat sentence is clearly addressed to actions taken at meetings which do not conform to the requirements of RCW 42.30. It is the first sentence of RCW 42.30.060 which states which actions must be taken at meetings open to the public. The issue for our determination, then, is whether the … decision … was an "ordinance, resolution, rule, regulation, order, or directive," within the meaning of RCW 42.30.060.

50 Wash.App. at 738, 750 P.2d 656.

The court noted that the terms at issue were left undefined, and looked for guidance to Washington's administrative procedure act, which defined a "rule" as "any agency, order, directive, or regulation of *general applicability.*" *Id.* (quoting Wash. Rev.Code § 34.04.010(2)) (emphasis in original). The court reasoned that "the terms used in RCW 42.30.060 denote matters of some broad public import or 'general applicability.'" *Id.* It rejected the firefighter's argument that the OPMA was violated because the decision to fire him was not a matter of "public import or general applicability." *Id.* Relying on *Slaughter,* Feature Realty argues that the decision whether to settle a claim made against the city is not a matter of "public

import or general applicability" and so the OPMA was not violated.

*Slaughter* is not on point. The *Slaughter* court did not address the issue we are confronted with here—whether or not the general rule of openness, or an exception to that general rule, applies. In *Miller* the Washington Supreme Court squarely confronted that issue. Furthermore, the Supreme Court in *Miller* spoke in much broader terms with respect to what constituted government action, and which of those actions were required to take place in public. The *Miller* court stated in unequivocal terms that "*all meetings* [of the governing body] be open to the public unless one of the act's exceptions applies." 138 Wash.2d at 325, 979 P.2d 429 (emphasis added). The Act itself defines a meeting of a governing body, with some circularity, as "meetings at which action is taken." Wash. Rev.Code § 42.30.020(4). Action in turn is defined as "the transaction of official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions." *Id.* § 42.30.020(3). Final action means "a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance." *Id.* In other words, if "action" or "final action" is taken, then it is a meeting, and under *Miller,* it must be open to the public unless there is an exception to the contrary.

Finally, and most importantly, the *Miller* court expressly distinguished *Slaughter* in this context. In *Miller,* the city relied on *Slaughter,* as Feature Realty does here, to argue that its decision was not one of "general applicability," and hence did not

violate the OPMA. The Supreme Court stated,

> In ... *Slaughter* ... the Court of Appeals [did not] consider[ ] exceptions to the act under RCW § 42.30.110, but rather RCW 42.30.060(1), a provision of the act which requires an 'ordinance, resolution, rule, regulation, order or directive,' must be adopted at a public meeting which has been scheduled in accordance with the provisions of the act .... *Slaughter* [does] not define 'final action' under the act .... [and][t]he statutory definition of 'final action' must control.

138 Wash.2d at 330, 979 P.2d 429. In short, *Miller* controls, not *Slaughter*. As discussed previously, the two-part test is "whether (1) the executive session falls within the definition of 'meeting' under the act, and (2), if so, whether one of the act's exceptions applies." *Id.* at 325, 979 P.2d 429.

## A

■ The executive session convened to consider the terms of the proposed settlement was a meeting within the meaning of the Act. At the meeting, the city attorney distributed a confidential memorandum detailing the terms of the proposed settlement, and discussed the proposed settlement with the council members. The council was then asked to approve of the proposed settlement, and it did so unanimously by "going around the table." Thus, "action" was taken within the meaning of the Act. *See* Wash. Rev.Code § 42.30.020(3) (action is "the transaction of official business of a public agency ... including ... deliberations, discussions, considerations, reviews, evaluations...."). Indeed, final action was taken, since a "collective positive ... decision" was made by the council. *Id.; see also Miller*, 138 Wash.2d at 331, 979 P.2d 429 (" 'Final action' as defined in [the Act] does not require a formal motion: it can simply be an informal proposal resulting in a positive or negative decision, or an actual vote."). Therefore, under the OPMA, the meeting was required to be open to the public unless an exception applies. *See Miller*, 138 Wash.2d at 325, 979 P.2d 429.

## B

■ While a government agency may be entitled to convene an executive session pursuant to a specific exception, "once in executive session ... [the government] is required to limit its action in executive session to that authorized by the relevant exception." *Id.* at 327, 979 P.2d 429. In other words, "*only the action explicitly specified* by the exception may take place in executive session." *Id.* (emphasis added). Unless the action is "explicitly specified," it is "beyond the scope of the exception" and violates the Act. *Id.* With respect to the specific exception at issue here—the exception for discussions with legal counsel—the Washington Supreme Court has held that it is available when the relevant government actor "(1) discusses with counsel (2) actual or potential litigation (3) where public knowledge of the discussion is likely to cause adverse legal or financial consequences." *In re the Recall of Lakewood City Council Members*, 144 Wash.2d 583, 586, 30 P.3d 474 (2001).

■ Here, there is no dispute that the city council was entitled to convene an executive session to *discuss* with its attorney the terms of the settlement, and to receive legal advice with respect to that proposal. *Id.* at 586, 30 P.3d 474. What the city council could not do was approve the settlement by way of a "collective positive decision" in closed session. It is *that* action that does not come within the terms of the exception because "only the action explicitly specified by the exception" is privileged. All other actions are "beyond the scope of the exception," and must take

place in public. *Miller*, 138 Wash.2d at 327, 979 P.2d 429.

Feature Realty points out that several of the enumerated exceptions explicitly state that final action on a matter can take place *only* in a public meeting. *See, e.g.,* Wash. Rev.Code § 42.30.110(1)(c) (exception to consider price at which real estate will be offered when public knowledge would decrease price, but final action must be taken in public meeting); *id.* § 42.30.110(1)(g) (exception to evaluate qualifications of employment applicant, but final action in hiring must take place in public meeting); *id.* § 42.30.110(1)(h) (exception to evaluate candidates for appointment to elective office, but final action on candidacy must take place in public). On the other hand, there are six exceptions, of which the exception for discussions with legal counsel is one, which make no mention of final action having to take place in public. This omission on the part of the legislature, the argument goes, must mean that final action in the executive session itself is permissible.

While this is a clever textual argument, it runs straight into the Washington Supreme Court's decision in *Miller*. "[O]nly the action explicitly specified by the exception" is privileged. All other actions are "beyond the scope of the exception," and must take place in public. 138 Wash.2d at 327, 979 P.2d 429. The "final action" of approving the settlement is not "explicitly specified" and so under *Miller*, Feature Realty's argument fails.

Nor does *Lakewood* dictate a different result, as Feature Realty argues. In that case, all of the action that took place at the executive session fell within the express terms of the exception for discussion with legal counsel. The Washington Supreme Court took pains to point out that "no vote was taken." 144 Wash.2d at 476–77, 28 P.3d 720. In fact, the city council had previously passed a resolution that con-

ferred on the city manager the authority to join in the lawsuit. The Supreme Court held that because the council's "conduct fell within the exception for attorney/client discussion and the [fact that] no vote was taken, we find the council members took no prohibited action in executive session." *Id.* In contrast, because the council here took a "collective positive ... decision" when it approved the terms of the settlement, its conduct is "beyond the scope of the exception," and must take place in public.

To be sure, there is some tension in the Act between the rule that government action should generally take place in public on the one hand, and the necessity for confidential communications with counsel on the other. In interpreting sunshine laws such as the one at issue here, courts across the country have found different ways to resolve the competing policy concerns. *See* Marion J. Radson & Elizabeth A. Waratuke, *The Attorney–Client and Work Product Privileges of Government Entities*, 30 Stetson L.Rev. 799, 809–16 (2001) (discussing difficulties in reconciling state sunshine laws with necessity for confidential communications with counsel).

Fortunately, the Washington Supreme Court has resolved those policy concerns and provided us with a clear road map in this case. If the action is not "explicitly specified" in the exception, then such action must take place in public, or it is null and void. *Miller*, 138 Wash.2d at 327, 979 P.2d 429. While there is no suggestion the city council acted in bad faith when it approved the settlement in executive session, the fact remains it settled claims made against the city and the individual members of the council *personally*, using hundreds of thousands of dollars out of the public fisc to do so, as well as agreeing to abandon certain publicly-owned lands to the developers. Its decision took place

behind closed doors, with no opportunity for public comment. The statutory procedures at issue here are essential to protect the interests of the public. *Cf. Nelson v. Pac. County,* 36 Wash.App. 17, 24, 671 P.2d 785 (1983). They were ignored, and the settlement agreement is therefore null and void.[6]

## III

■ Feature Realty argues that even if the OPMA was violated as an initial matter, the settlement agreement is nonetheless valid because it was later ratified by the city council at a meeting that was open to the public. It points out that subsequent to the agreement's execution, the council approved the payment of certain moneys due under the agreement, and passed two ordinances abandoning public lands to the developers, and both of these actions were taken in meetings open to the public.

These actions do not constitute ratification under Washington law. The "well established rule" in Washington "is that where a governing body takes an otherwise proper action later invalidated for procedural reasons only, that body may retrace its steps and remedy the defects by reenactment with the proper formalities." *Henry v. Oakville,* 30 Wash.App. 240, 246, 633 P.2d 892 (1981). The actions taken by the city council—the approval of the disbursement of certain funds and the alienation of certain public lands—are a far cry from "retrac[ing] its steps and remedy[ing] the defects by reenactment with the proper formalities" required un-

der Washington law. *Id.* We reject Feature Realty's argument that the agreement was ratified.

## IV

■ Feature Realty's next argument is that if the agreement is invalid due to the OPMA violation, the city should be equitably estopped from asserting in these proceedings that the agreement was invalid. Feature Realty relies on *Finch v. Matthews,* 74 Wash.2d 161, 443 P.2d 833 (1968), for the proposition that the city can and should be estopped from asserting that the agreement is invalid in this case.[7]

■ The general rule is that "the doctrine of equitable estoppel will not be applied against the public." *Id.* at 170, 443 P.2d 833. However, a distinction is drawn between a *total absence* of power and the *irregular exercise* of granted power, and in the latter case, equitable estoppel can be applied. As explained in *Finch,*

> Equitable estoppel may be applied against the claim of the municipality where the acts are within the general powers granted to the municipality even though such powers have been exercised in an irregular and unauthorized manner, assuming that all of the other elements of the doctrine are present....

*Id.* at 171, 443 P.2d 833.

This distinction would seem to fit here— the city council undoubtedly has the "general power" to settle claims made against the city, *see infra* n. 4 (citing Spokane, Wa., Code §§ 38, 115), that power was

---

6. Because we are not persuaded that the applicable Washington cases are irreconcilable, Feature Realty's Motion to Certify the Question Presented in this case to the Washington Supreme Court is denied. We also deny SRDF's request for attorney fees.

7. The elements of equitable estoppel are (1) an admission, statement, or act inconsistent

with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party from allowing the first party to contradict or repudiate such admission, statement, or act. *See Finch,* 74 Wash.2d at 171 n. 3, 443 P.2d 833.

simply exercised in an "irregular and unauthorized manner."

However, the decision in *Nelson* makes it clear that equitable estoppel does not apply where the public's right to have government deliberate in public is violated. In *Nelson*, one of the issues the court addressed was whether the county had followed the proper procedures in providing for the abandonment of public lands. The court concluded that it had not, because under Washington law, county lands could not be disposed of without notice to the public and the opportunity for public comment. *See Nelson*, 36 Wash.App. at 23–24, 671 P.2d 785 (citing Wash. Rev. Code §§ 36.34.020–040 (providing for notice and public hearing)). The court stated that these provisions of the Washington code "demonstrate a strong legislative intent that property held for the public use and benefit not be summarily disposed of without giving the public affected a significant opportunity to participate." *Id.* at 24, 671 P.2d 785.

The *Nelson* court distinguished *Finch,* and that distinction is directly on point in this case,

> *Finch* ... is likewise not controlling. There the court upheld an exchange of a dedicated right of way for a more desirable parcel nearby. It pointed out that the County had not followed the statutory methods for vacating and acquiring the properties, but held the action to be merely an irregular and unauthorized manner of exercising the broad powers granted to counties to build and operate roads.... No expectations were compromised by that transaction, and the procedural protections were not necessary. *The opposite is true here. The statutory procedures were necessary to protect the interests of respondents and other members of the public in that area. They were ignored and we will not sanction the alienation of public property which exclude important safeguards.*

*Id.* (emphasis added).

The "important safeguards" inherent in Washington's open government laws, which were "ignored" here, are of an obvious and vital character. Under such circumstances, it is difficult to believe the Washington Supreme Court would tolerate the application of equitable estoppel to essentially provide an end-run around the state's sunshine laws. In short, *Nelson* makes it clear that equitable estoppel does not lie where the OPMA has been violated.

At this point the concerned reader might well ask what has happened to the ancient equitable principle that no one should profit from one's own wrong. *See* Restatement of Restitution § 3 (1937) ("A person is not permitted to profit by his own wrong at the expense of another."). After all, it is the *city* that is responsible for violating the public's rights, and yet it has (successfully) set up that very violation as a defense to Feature Realty's petition to arbitrate a dispute regarding the settlement agreement—an agreement which the city itself warranted that it had the right to enter into. There are two responses to such concerns, however.

First and foremost, Feature Realty's claims against the city must take a back seat to the public's right to open government—the procedural violations at issue in this case are no mere formality, and are essential to protect the interests of the public—they cannot simply be ignored. The public's rights here simply outweigh Feature Realty's. Second, the fact that the *specific* equitable remedy of estoppel does not apply here does not foreclose Feature Realty from seeking *other* forms of equitable relief from the city and individual council members. Indeed, the district court found that Feature Realty was entitled to seek such relief, and as we

previously pointed out, the *Mission Springs* litigation in state court is under way, and a trial is pending in Spokane County Superior Court on Feature Realty's claims. *See infra* n. 2. In short, in holding that the agreement is unenforceable and that equitable estoppel does not apply, it is the rights of the *public* with which we are concerned; we cannot and do not condone the actions of the city here.

## V

Finally, Feature Realty argues the district court abused its discretion in denying its motion for relief from judgment.

■ Feature Realty's motion for relief from judgment was based on "surprise" and "newly discovered evidence." [8] Specifically, the evidence it relied on was the fact that the city attorney assured the Spokane County Court judge it had the necessary authority to enter into the settlement agreement before the judge agreed to dismiss the *Mission Springs* litigation, and, therefore, judicial estoppel should prevent it from taking a directly contrary position in these proceedings. Feature Realty argues that this is "newly discovered evidence" because its new lawyers were not aware of the assurances made to the Spokane County Court judge until eight days before judgment was entered in federal district court. (Its former lawyers were present when the city attorney made the assurances to the Spokane County Superior Court judge.)

Relief from judgment on the basis of newly discovered evidence is warranted if (1) the moving party can show the evidence relied on in fact constitutes "newly discovered evidence" within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover this evidence;

and (3) the newly discovered evidence must be of "such magnitude that production of it earlier would have been likely to change the disposition of the case." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A., Inc.,* 833 F.2d 208, 211 (9th Cir. 1987).

Feature Realty's argument fails at the first hurdle, because the assurances the city attorney made to the state court judge that Feature Realty relies on for its judicial estoppel argument is not "newly discovered evidence." Feature Realty's former lawyer knew of the assurances when they were made, in October 1998, and that knowledge is properly attributable to Feature Realty itself. *See Busk v. Hoard,* 65 Wash.2d 126, 134–35, 396 P.2d 171 (1964) ("Knowledge or notice by or to the agent is imputed to his principal; and the knowledge had by an agent will, therefore, bind his principal....."). Even assuming *arguendo* that Feature Realty had no notice of the assurances made by the city attorney until their *new* lawyers became aware of them, their new lawyers received that information eight days before the entry of judgment. Evidence "in the possession of the party before the judgment was rendered is not newly discovered...." *See Coastal Transfer Co.,* 833 F.2d at 212. The district court did not abuse its discretion in denying the motion.

**AFFIRMED.**

---

**8.** Federal Rule of Civil Procedure 60(b) provides that a district court "may relieve a party ... from a final judgment ... for ... (1) ... surprise ... [or] (2) newly discovered evi-

dence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) ...."