FILED
 2/6/2014
 1
 SUSAN M. SPRAUL, CLERK
 2 U.S. BKCY. APP. PANEL
 OF THE NINTH CIRCUIT
 3 UNITED STATES BANKRUPTCY APPELLATE PANEL
 4 OF THE NINTH CIRCUIT
 5 In re: ) BAP Nos. AZ-13-1024-PaKuD
 ) AZ-13-1043-PaKuD
 6 IRISH PUB—ARROWHEAD, LLC; ) (Consolidated)
 IRISH PUB—ARROWHEAD LAND, LLC,)
 7 ) Bk. Nos. 09-11124-EPB
 Debtors. ) 09-11137-EPB
 8 ______________________________) (Jointly Administered)
 )
 9 JEANEEN BONNETT; 100% NATURAL )
 GOURMET, )
10 )
 Appellants, )
11 )
 v. ) M E M O R A N D U M1
12 )
 MARGARET GILLESPIE, Chapter 7 )
13 7 Trustee; CONCAST, INC.; )
 DOMINIC JONES; ROBERT FOX; )
14 MOIRBIA PEORIARE, LLC; )
 MOIRBIA PEORIA, LLC; MOIRBIA, )
15 LLC; MOIRBIA SCOTTSDALE LLC; )
 STEVE GOUMAS; MY GOODNESS )
16 INC., )
 )
17 Appellees. )
 ______________________________)
18
 Argued and Submitted on January 23, 2014
19 at Tempe, Arizona
20 Filed - February 6, 2014
21 Appeal from the United States Bankruptcy Court
 for the District of Arizona
22
 Honorable Redfield T. Baum, Sr., Bankruptcy Judge, Presiding2
23
24
 1
25 This disposition is not appropriate for publication.
 Although it may be cited for whatever persuasive value it may
26 have (see Fed. R. App. P. 32.1), it has no precedential value.
27 See 9th Cir. BAP Rule 8013-1.
 2
28 Judge Redfield T. Baum, Sr. entered the order we review
 on appeal. Due to his retirement from full-time service, the
 Honorable Eddward Ballinger Jr. is now the presiding judge in the
 bankruptcy case.
 1 Appearances: John E. Karow, Esq. argued for appellants Jeaneen
 Bonnett and 100% Natural Gourmet; Oliver J. Davis,
 2 Esq. of May Potenza Baran & Gillespie PC argued
 for Appellee Margaret Gillespie; Brenda K. Martin,
 3 Esq. of Osborn Maledon, PA argued for appellees
 Concast, Inc., Dominic Jones, Robert Fox, Moirbia
 4 Peoriare, LLC, Moirbia Peoria, LLC, Moirbia, LLC
 and Moirbia Scottsdale, LLC.
 5
 6 Before: PAPPAS, KURTZ and DUNN, Bankruptcy Judges.
 7 In this chapter 73 case, creditors Jeaneen Bonnett and
 8 100% Natural Gourmet appeal the decision of the bankruptcy court
 9 denying their motion to set aside a sale of bankruptcy estate
10 assets. We AFFIRM the decision of the bankruptcy court.
11 FACTS
12 Debtor Irish Pub Arrowhead Land, LLC (“Pub Land”) owned a
13 parcel of land in Peoria, Arizona. Debtor Irish Pub Arrowhead,
14 LLC (“Pub”), owned and operated the Irish-themed restaurant, “Lis
15 Doon Varma,” built on Pub Land’s property (together, “the
16 Property”). Steve Goumas is the managing member of Irish
17 Restaurant and Pub Company, LLC (“Irish Restaurant & Pub”), which
18 was the managing member of both Debtors.
19 At some point not clear in the record, Jeaneen Bonnett
20 (“Bonnett”) was the manager of marketing, administration and
21 financial bookkeeping for both Debtors. Bonnett also allegedly
22 owns, in her own right, or indirectly through her wholly owned
23 company 100% Natural Gourmet (together with Bonnett,
24
25
 3
 Unless otherwise indicated, all chapter and section
26 references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
27 "Rule" references are to the Federal Rules of Bankruptcy
 Procedure. All “Civil Rule” references are to the Federal Rules
28 of Civil Procedure.

 -2-
 1 “Appellants”), certain intellectual property rights licensed to
 2 and used by Debtors.
 3 During construction of Pub, a dispute arose between Pub Land
 4 and one of the contractors, Concast, Inc. (“ConcastCorp”) when
 5 ConcastCorp filed a workman’s lien against the Property. To
 6 resolve the dispute, Pub Land filed suit against ConcastCorp and
 7 others in Maricopa County Superior Court on July 29, 2008. Irish
 8 Pub - Arrowhead Land LLC v. Concast, Inc. (the “State Court
 9 Litigation”). CV2008-10862. Partly as a result of this on-going
10 contest, on May 21, 2009, Pub and Pub Land each filed petitions
11 for relief under chapter 11. On June 2, 2009, the bankruptcy
12 court ordered joint administration of the two bankruptcy cases.
13 A creditor filed a motion for appointment of a chapter 11
14 trustee in the bankruptcy cases on September 11, 2009.
15 ConcastCorp, the second largest creditor, and the United States
16 Trustee subsequently joined in that motion. After a hearing on
17 July 6, 2010, the bankruptcy court ordered the appointment of a
18 trustee; Daniel P. Collins was appointed chapter 11 trustee on
19 July 13, 2010. The court ordered the bankruptcy cases converted
20 to chapter 7 cases on February 17, 2011, and Collins continued as
21 chapter 7 trustee.4
22 The Wells Fargo Loans
23 In December, 2006, Wells Fargo Bank, N.A. (“Wells Fargo”)
24
25
 4
 Mr. Collins was later appointed to the bankruptcy bench,
26 and at some time before January 3, 2013, Margaret A. Gillespie
27 was appointed successor chapter 7 trustee. Unless there is a
 need to distinguish between them, we refer to Collins or
28 Gillespie collectively as “Trustee.”

 -3-
 1 made a $2,646,000 loan and a $1,402,000 loan to finance
 2 construction of the pub improvements. Debtors jointly executed
 3 two promissory notes in favor of Wells Fargo, and secured the
 4 notes with deeds of trust on the Property. While not clear in
 5 the record, at some time the Wells Fargo loans went into default
 6 and, on February 5, 2009, Wells Fargo recorded a Notice of
 7 Trustee’s Sale of the Property. Pub and Pub Land filed their
 8 bankruptcy petitions a short time later.
 9 Wells Fargo commenced a civil suit in Maricopa County
10 Superior Court on September 4, 2009, against Irish Restaurant &
11 Pub, Goumas, Natural Gourmet Enters., Inc., and My Goodness, Inc.
12 to recover from them as guarantors of the Wells Fargo Loans.
13 Wells Fargo Bank, N.A. v. Irish Restaurant & Pub, LLC, et al.
14 CV2009-028358. A stipulated judgment was entered against the
15 guarantors on July 19, 2010 for $2,042,878 (the “Judgment”).
16 Wells Fargo filed a motion for relief from the automatic
17 stay in Debtors’ bankruptcy cases on September 3, 2009, seeking
18 authority to complete the foreclosure on the Property. After
19 numerous continued hearings, the bankruptcy court entered a
20 stipulated order granting stay relief on November 3, 2010. As
21 part of an agreement for entry of this order, Wells Fargo
22 assigned the Judgment to Trustee.
23 Trustee then commenced an adversary proceeding against
24 Appellants, Goumas and certain related parties (the “Adversary
25 Proceeding”). The first four counts in the complaint sought:
26 (1) to pierce the corporate veil of My Goodness and determine
27 that it is an alter ego of Debtors Pub and Pub Land; (2) a
28 declaratory judgment that the intellectual property asserted by

 -4-
 1 Appellants as their property was in fact property of the estate;
 2 (3) avoiding transfer of the intellectual property to a third
 3 party; and (4) denying claims of Irish Restaurant & Pub.
 4 The Sale Motion
 5 On May 18, 2012, Trustee filed a motion seeking authority to
 6 sell property free and clear of liens, claims and interests
 7 pursuant to § 363. Trustee informed the bankruptcy court that he
 8 had received an offer of $75,000 for certain assets of the
 9 bankruptcy estate from a group he identified as the “Concast
10 Parties,” consisting of ConcastCorp, Dominic Jones, Robert Fox,
11 Moirbia Peoriare, LLC, Moirbia, LLC, and Moirbia Scottsdale, LLC.
12 Trustee proposed to sell the following estate assets:
13 a. All of Trustee’s rights and interests as plaintiff
 in the Adversary Proceeding [except for counts
14 five through seven that deal with loans made to
 Debtors].
15
 b. The Judgment and associated rights; and
16
 c. The Debtors’ right, title, and interest in and to
17 the intellectual property, including common law
 rights, together with the good will of the
18 business symbolized by said intellectual property,
 to the extent such intellectual property exists,
19 including but not limited to, the intellectual
 property described in the Adversary Proceeding.
20
21 Tr. Sale Motion at 3. Trustee’s sale motion also proposed a
22 release of claims by the Concast Parties against the estate, and
23 a release of Trustee’s claims against the Concast Parties.
24 Appellants objected to the sale motion on July 3, 2012.
25 Appellants’ principal arguments in its objection were: (1) the
26 intellectual property Trustee was attempting to sell was property
27 of the Appellants; (2) the Concast Parties were not good faith
28 purchasers because they had filed a false claim in the bankruptcy

 -5-
 1 case; (3) ConcastCorp was in litigation with Debtor Pub Land, and
 2 Trustee had not considered the value of that claim, which he
 3 would release. Trustee responded to Appellants’ objection on
 4 July 9, 2012, noting that the he was not attempting to sell any
 5 disputed intellectual property assets, only the estates’ rights
 6 to the extent they actually existed. As to the estates’ interest
 7 in any litigation with ConcastCorp, Trustee asserted that the
 8 estates’ claims in that litigation were likely not sufficient to
 9 warrant pursuit, and releasing the claims would benefit the
10 creditors.
11 The bankruptcy court conducted a hearing on Trustee’s sale
12 motion on July 31, 2012 at which Trustee, Bonnett, Debtors, and
13 the Concast Parties were represented. A hearing transcript is
14 not in the record, but the bankruptcy court’s minute entry
15 entered after the hearing recites:
16 Bidding commences between Co[n]cast and Bonnett.
17 The final bid is accepted from Co[n]cast for
 $115,000.00 and Bonnett is accepted as the backup
18 bidder. An order will not be signed until counsel have
 had an opportunity to brief whether Co[n]cast is a good
19 faith purchaser by August 3, 2012, with responses due
 by August 7, 2012.
20
21 Appellants filed a “motion” to demonstrate that ConcastCorp
22 was not a good faith purchaser on August 3, 2012. In it, they
23 essentially continued their argument that ConcastCorp had filed a
24 false lien against Pub which had triggered Pub’s bankruptcy, and
25 the value of the litigation against ConcastCorp was greater than
26 the value of ConcastCorp’s claim against the estates.
27 ConcastCorp responded on August 7, 2012, generally denying the
28 allegations of Appellants.

 -6-
 1 The bankruptcy court addressed the objection in a minute
 2 entry/order on August 10, 2012:
 3 The essence of the objection [by Appellants] is that
 prepetition Concast engaged in wrongful conduct which
 4 damaged the debtor and its principals and, therefore,
 according to the objectors Concast cannot be a good
 5 faith purchaser. The court concludes that the law is
 that lack of good faith is shown by fraud, collusion
 6 between the purchaser and other bidders or the trustee,
 or an attempt to take grossly unfair advantage of other
 7 bidders. See In re M Capital Corp., 290 B.R. 743 (9th
 Cir. BAP 2003) and cases cited therein. It appears
 8 clear to the court that there are many disputed issues
 between Concast and the Bonnett Group/and others.
 9 However, the test is has Concast wrongfully conducted
 itself in connection with the auction sale. There is
10 nothing before the court to even hint that Concast
 acted wrongfully regarding the sale. Rather, the
11 auction sale was fairly conducted and anyone, including
 the Bonnett Group, was given ample opportunity to
12 overbid Concast.
13 Based on this record, the court concludes that Concast
 qualifies as a good faith purchaser under
14 Section 363(m).
15 On August 21, 2012, the bankruptcy court entered an Order
16 granting the sale motion (the “Sale Order”). Among other things,
17 the Sale Order specifically identified the purchasing party, and
18 stated:
19 Concast Corporation, Dominic Jones, Robert Fox, Moirbia
 Peoriare, LLC, Moirbia, LLC, and Moirbia Scottsdale,
20 LLC (the “Concast Parties”) made an original offer to
 purchase the Assets for the amount of $75,000, together
21 with a mutual release of the Concast Parties’ claims
 against the estate and the Trustee’s claims against the
22 Concast Parties. The Sale Motion provided for higher
 and better offers to be entertained at the Sale
23 Hearing. The highest and best offer for the Assets
 received by the Court and the Trustee at the Sale
24 Hearing was an offer of $115,000, together with the
 aforementioned additional conditions, from the Concast
25 Parties. . . .
26 The Court approves the sale of the Assets to the
 Concast Parties and hereby orders that the sale price
27 for the assets is $115,000 in United States Dollars
 (“Purchase Price”), together with a mutual release of
28 all claims as specifically set forth in the Sale

 -7-
 1 Motion.
 2 Sale Order at 2-3. Appellants did not appeal the Sale Order.
 3 On November 28, 2012, Goumas and Appellants filed a motion
 4 asking the bankruptcy court to set aside the Sale Order.
 5 Appellants argued that case law regarding § 363 sales required
 6 that the purchaser be properly identified and give value for the
 7 purchase. Appellants suggested that, in the Sale Order, the real
 8 purchaser could not be identified with accuracy; that a third
 9 party, Martin Boyle, had actually provided $105,000 of the
10 $115,000 purchase price; and that the Concast Parties had
11 prevented Goumas and Appellants from discovering the nature of
12 payments until October 31, 2012.
13 Trustee responded to this motion on December 11, 2012.
14 According to Trustee, there was no ambiguity in the Sale Order as
15 to the purchaser, the Concast Parties, and that their attorney
16 had given Trustee two checks, one for $105,000 and one for
17 $10,000, to fulfill the terms of the sale. The Concast Parties
18 joined in Trustee’s response on December 12, 2012.
19 The bankruptcy court held a hearing on the motion to set
20 aside the Sale Order on December 19, 2012. A transcript is
21 included in the record. Appellants, Concast Parties, Trustee and
22 Goumas were represented. After hearing arguments of counsel, the
23 bankruptcy court took the matter under advisement.
24 On January 11, 2013, the court entered a Minute Entry/Order
25 in which it addressed Appellants’ and Goumas’ arguments:
26 The court concludes that both the record here and the
 sale order are clear and not ambiguous as to the
27 successful bidder. . . . The Sale Order clearly
 identifies the high bidders; and the court approved
28 backup bidders.

 -8-
 1 The undisputed facts are that the purchase price
 required by the order was timely paid. . . . It is
 2 beyond dispute that value was given by the payment of
 the highest bid amount at the auction. Unlike the case
 3 history relied upon by movants, this is not a situation
 where the future financial ability of the buyer is of
 4 concern for any reason. Rather, this is a classic
 auction where the high bidder gets to buy the auctioned
 5 assets. The court can see no reason to set aside the
 sale because Boyle paid most of the auction/purchase
 6 price.
 7 Lastly, movants assert that the successful bidder did
 not comply with the terms of the sale order. To the
 8 contrary the court concludes that the bidder group
 either complied with or substantially complied with the
 9 sale order.
10 Minute Entry/Order at 2-2.
11 On January 23, 2013, the bankruptcy court entered an order
12 denying the motion to set aside the Sale Order for the reasons
13 stated in the Minute Entry/Order. Appellants filed a timely
14 appeal.5
15 JURISDICTION
16 The bankruptcy court had jurisdiction under 28 U.S.C.
17 §§ 1334 and 157(b)(2)(A), (N) and (O). The Panel’s jurisdiction
18 is based upon 28 U.S.C. § 158. Trustee suggests that this appeal
19 is moot; we discuss that argument below.
20 ISSUES
21 Whether this appeal is moot.
22 Whether the bankruptcy court abused its discretion in
23 denying appellants’ motion to set aside the sale.
24
 5
25 Appellants had filed an appeal of a Minute Entry/Order
 entered by the bankruptcy court on January 18, 2013; they then
26 filed an appeal of the court’s order denying the motion to set
27 aside the Sale Order on February 1, 2013. Both appeals were
 timely. The Panel consolidated the two appeals on April 17,
28 2013.

 -9-
 1 STANDARDS OF REVIEW
 2 We determine our jurisdiction, including mootness issues, de
 3 novo. Professional Programs Grp. v. Dep’t of Commerce, 29 F.3d
 4 1349, 1352 (9th Cir. 1994).
 5 The bankruptcy court order denying the motion to set aside
 6 the Sale Order is reviewed for abuse of discretion. Hasso v.
 7 Mozsgai (In re Sierra Fin. Servs.), 290 B.R. 718, 726 (9th Cir.
 8 BAP 2002). A bankruptcy court abuses its discretion if it
 9 applies an incorrect legal standard, or misapplies the correct
10 legal standard, or if its factual findings are illogical,
11 implausible or without support from evidence in the record.
12 United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en
13 banc).
14 DISCUSSION
15 I.
16 This appeal is not moot.6
17 We first address Trustee’s argument that this appeal is
18 equitably moot. It is not.
19 Equitable mootness applies when “a comprehensive change of
20 circumstances has occurred so as to render it inequitable for a
21 court to consider the merits of the appeal.” Motor Vehicle Cas.
22 Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),
23
24 6
 The equitable mootness argument is raised in Trustee’s
25 opening brief. Trustee’s Op. Br. at 10. In a Clerk’s Order
 entered on July 18, 2013, Appellants were directed to respond to
26 the mootness question, which they did on July 22, 2013. Our
27 motions panel issued an order determining that the appeal was not
 moot, subject to further review of the issue by this merits
28 Panel. We agree that this appeal is not moot.

 -10-
 1 627 F.3d 869, 880-81 (9th Cir. 2012). Equitable mootness is
 2 particularly influential in bankruptcy proceedings “where public
 3 policy values the finality of bankruptcy judgments because
 4 debtors, creditors, and third parties are entitled to rely on a
 5 final bankruptcy court order.” Id. (citing In re Onouli-Kona
 6 Land Co., 846 F.2d 1170, 1172 (9th Cir. 1988)). In cases such as
 7 this one, the principal question we face is whether the appeal
 8 "present[s] transactions that are so complex or difficult to
 9 unwind that the doctrine of equitable mootness would apply."
10 Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933
11 (9th Cir. 1999). The party arguing for dismissal based on
12 mootness, "bears the heavy burden of establishing that we cannot
13 provide any effective relief." United States v. Gould
14 (In re Gould), 401 B.R. 415, 421 (9th Cir. BAP 2009).
15 Trustee has not met its burden. The subject sale
16 transaction was not so complex that it would be difficult to
17 unwind. To be sure, equitable mootness applies to appeals of
18 orders concerning sales under § 363.7 Clear Channel Outdoor,
19 Inc. v. Knupfer (In re PW, LLC), 391 B.R. 25, 33 (9th Cir. BAP
20 2008). As the Panel explained:
21 Equitable mootness requires the court to look beyond
 impossibility of a remedy to "the consequences of the
22 remedy and the number of third parties who have changed
23
 7
 Appellants are incorrect in asserting that equitable
24
 mootness only applies to appeals of confirmation of
25 reorganization plans. Although that was the focus of the Thorpe
 Insulation case, the Ninth Circuit has applied equitable mootness
26 in other contexts. See, e.g., Focus Media, Inc. v. NBC
27 (In re Focus Media, Inc.), 378 F.3d 916, 923 (9th Cir. 2008)
 (involuntary petitions); Semel v. Dill (In re Dill), 992 F.2d
28 1004, 1007 (9th Cir. 1984) (attorney’s fees).

 -11-
 1 their position in reliance on the order that is being
 appealed." [Darby v. Zimmerman (In re Popp), 323 B.R.
 2 260, 271 (9th Cir. BAP. 2005)]. As we further stated
 in Popp, "[c]ourts have applied the doctrine of
 3 equitable mootness when the appellant has failed to
 obtain a stay and [although relief is possible] the
 4 ensuing transactions are too 'complex and difficult to
 unwind.'" Id. at 271 (citations omitted).
 5 "Ultimately, the decision whether to unscramble the
 eggs turns on what is practical and equitable." Baker
 6 & Drake, Inc. v. Pub. Serv. Comm'n (In re Baker &
 Drake, Inc.), 35 F.3d 1348, 1352 (9th Cir. 1994).
 7
 8 In re PW, LLC, 391 B.R. at 33. And in Thorpe Insulation, the
 9 Ninth Circuit provided guidelines for determining equitable
10 mootness on appeal:
11 We have not yet expressly articulated a comprehensive
 test [for equitable mootness], but our precedents have
12 looked at whether a stay was sought, whether the
 [transaction] has been substantially consummated,
13 whether third party rights have intervened, and, if so,
 whether any relief can be provided practically and
14 equitably.
15 In re Thorpe Insulation, 677 F.3d at 880.
16 Appellants concede that they did not seek a stay pending
17 appeal of either the Sale Order or of the order denying their
18 motion to set aside the Sale Order. The first criterion for
19 equitable mootness has been met.
20 The term “substantially consummated” in the Thorpe
21 Insulation decision refers to a term of art in plan confirmation
22 law. A chapter 11 reorganization plan has been substantially
23 consummated if substantially all of the property has been
24 transferred, the debtor or its successor has taken control of
25 substantially all of the property, and distribution under the
26 plan has commenced. See § 1101(2). Analogizing to a sale of
27 property, the Ninth Circuit would likely be concerned in a case
28 like this one if the proceeds of sale had been received by the

 -12-
 1 seller/trustee and then distributed to the creditors. However,
 2 Trustee acknowledges that the funds received for the subject sale
 3 remain in his possession and will not be distributed pending the
 4 outcome of this appeal. Consequently, the second criterion
 5 indicating equitable mootness is not present.
 6 In addition, there are no other “third-party rights”
 7 involved in this appeal. All of the parties that could
 8 conceivably be affected by any modification to the Sale Order are
 9 before the Panel and have actively participated in both the
10 bankruptcy case and this appeal.8 The third criterion for
11 mootness is not met.
12 In sum, were the Panel to so decide, it would not be
13 impractical or inequitable to grant the relief Appellants seek.
14 Trustee retains the sale proceeds and could be directed to return
15 them to the Concast Parties. Trustee could also be directed by
16 the bankruptcy court to accept Appellants’ backup bid. This
17 appeal is not equitably moot.
18 II.
19 The bankruptcy court did not abuse its discretion in
 denying the motion to set aside the Sale Order.
20
 A.
21 Reconsideration under Civil Rule 60(b)(2)
22 The motion to set aside a Sale Order is treated as a motion
23 for reconsideration either under Rule 9023, which incorporates
24
25
 8
 The only third party of which we are aware in this
26 dispute may be Martin Boyle. If this sale were unwound, he would
27 presumably have his $105,000 refunded. Boyle has not asserted
 any rights in the bankruptcy court or in this appeal, so we
28 cannot say that his rights would be affected.

 -13-
 1 Civil Rule 59, or under Rule 9024, which incorporates Civil
 2 Rule 60. In re Sierra Fin. Servs., 290 B.R. at 726. Since Civil
 3 Rule 59 only applies when the motion to alter an order is filed
 4 within fourteen days of entry of that order, and the motion to
 5 set aside the Sale Order in this case was filed over three months
 6 after entry of the Sale Order, Appellants’ entitlement to relief
 7 is measured under Civil Rule 60. Harvest v. Castro, 531 F.3d
 8 737, 746-47 (9th Cir. 2008)(reconsideration motions filed more
 9 than fourteen days after entry of an order are treated under
10 Civil Rule 60(b)).
11 Appellants’ various arguments can be reduced to their
12 essence. They contend that they could not challenge the sale and
13 Sale Order before they discovered the true identity of the source
14 of sale funds. Appellants allege that the Concast Parties
15 withheld the fact from the bankruptcy court and them that Martin
16 Boyle would provide $105,000 of the $115,000 to acquire the
17 assets. Appellants represent that they only discovered this fact
18 on October 31, 2012, after numerous requests to Trustee to
19 provide unredacted copies of the payments checks. Therefore,
20 they insist, this fact constitutes “new evidence” that would
21 justify reconsideration of the Sale Order by the bankruptcy
22 court. Appellants’ argument invokes Civil Rule 60(b)(2), which
23 provides:
24 Rule 60. Relief from a Judgment or Order . . . (b)
 Grounds for Relief from a Final Judgment, Order, or
25 Proceeding. On motion and just terms, the court may
 relieve a party or its legal representative from a
26 final judgment, order, or proceeding for the following
 reasons: . . . (2) newly discovered evidence that,
27 with reasonable diligence, could not have been
 discovered in time to move for a new trial under
28 Rule 59(b)[.]

 -14-
 1 Relief from an order or judgment to offer newly discovered
 2 evidence under Civil Rule 60(b)(2) is warranted if: (1) the
 3 moving party can show the evidence relied on must have existed at
 4 the time of the hearing; (2) the moving party exercised due
 5 diligence to discover this evidence; and (3) the newly discovered
 6 evidence must be of "such magnitude that production of it earlier
 7 would have been likely to change the disposition of the case."
 8 Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th
 9 Cir. 2003) (citing Coastal Transfer Co. v. Toyota Motor Sales,
10 U.S.A., Inc., 833 F.2d 208, 211 (9th Cir. 1987)).
11 In Trustee’s response to the motion to set aside the sale
12 motion, he stated that he had received two cashier’s checks from
13 the attorney for the Concast Parties within three days of the
14 Sale Order. Consequently, we can conclude that the checks did
15 exist within the time for Appellants to seek a new trial under
16 Civil Rule 59(b). Appellants argue that they attempted on
17 several occasions to obtain copies of the unredacted checks.
18 Trustee does not contest this, and acknowledges that it was not
19 until October 31, 2012 that he complied. In other words,
20 Appellants were seemingly diligent in seeking to discover the
21 evidence.
22 However, as the detailed Minute Entry/Order of the
23 bankruptcy court shows, the information about the source of the
24 purchase funds targeted by Appellants was not of “such magnitude
25 that production of it earlier would have been likely to change
26 the disposition of the case." Feature Realty, Inc., 331 F.3d at
27 1093. Indeed, the bankruptcy court considered the evidence
28 concerning the source of the sale proceeds, but found it need not

 -15-
 1 disturb its order: “The court can see no reason to set aside the
 2 sale because Boyle paid most of the auction/purchase price.”
 3 Minute Entry/Order at 2.
 4 Most of Appellants’ arguments seeking to set aside the Sale
 5 Order focus on their allegation that the identity of the
 6 purchaser was ambiguous. This discussion in both the bankruptcy
 7 court and this appeal relates to the Ninth Circuit’s decision in
 8 Ferrari N. Am., Inc. v. Sims (In re R.B.B., Inc.), 211 F.3d 475
 9 (9th Cir. 2000). There, the debtor R.B.B. was an auto
10 dealership under a franchise with Ferrari North America. Ferrari
11 notified R.B.B. that it would not renew the franchise; R.B.B.
12 reacted by filing for chapter 11 relief. In the bankruptcy case,
13 the trustee received an offer to purchase the franchise from an
14 entity called “Symbolic.” The bankruptcy court approved the
15 sale, noting that Symbolic was a combination of two automobile
16 dealerships, North Beach and West Coast. In its order approving
17 the sale, the bankruptcy court was ambiguous in describing the
18 assets sold and Symbolic, at times assigning assets to one of the
19 buyer dealerships, then to another, and at other times an amalgam
20 of both. Id. at 477-78. When asked to review the bankruptcy
21 court’s sale order, the Ninth Circuit ruled that:
22 [A]s two companies were ambiguously the purchaser, it
 cannot be concluded that an identified purchaser
23 existed. . . . The assets and lines of credit of North
 Beach and West Coast could not be mushed together.
24 Ambiguity as to the purchaser was as fatal to the sale
 as the two ships named Peerless were fatal to the
25 formation of a contract.
26 Id. at 480.
27 Citing R.B.B., Appellants argue that any ambiguity in the
28 Sale Order as to the purchaser is fatal to the sale. But as the

 -16-
 1 bankruptcy court correctly point out, “unlike [in R.B.B.], this
 2 is not a situation where the future financial ability of the
 3 buyer is of concern for any reason.” A review of the R.B.B. case
 4 supports the bankruptcy court’s interpretation.
 5 In In re R.B.B., the Ninth Circuit cited with approval to a
 6 decision of the bankruptcy court in In re Van Ness Auto Plaza,
 7 120 B.R. 545, 547 (Bankr. N.D. Cal. 1990), which provided a list
 8 of factors that a bankruptcy court should consider in determining
 9 whether an automobile manufacturer acted reasonably in
10 withholding consent to transfer an automobile franchise under
11 California law. Those factors included data on capitalization of
12 assignees of a franchise, their credit worthiness and prior
13 profitability. Thus, under the facts of that case, an assignment
14 or sale of an automobile franchise required the identification of
15 a purchaser/assignee and specific evaluations concerning that
16 party. Because a franchisor must depend upon the
17 creditworthiness of a proposed franchisee, it is understandable
18 how the identity of the true assignee is critical to the
19 bankruptcy court’s and parties’ evaluation of the merits of a
20 proposal.
21 In this case, the bankruptcy court determined that the
22 Trustee’s proposed cash sale implicated no special requirements
23 from the purchaser. This was instead a “classic auction sale
24 where the high bidder gets to buy the auctioned assets.” Case
25 law sets forth only two requirements for a sale under § 363: that
26 there must be an “identifiable” purchaser; and that purchaser
27 must give value. Ewell v. Diebert (In re Ewell), 958 F.2d 276,
28 281 (9th Cir. 1992); Fitzgerald v. Namba (In re Fitzgerald),

 -17-
 1 428 B.R. 872, 882 (9th Cir. BAP 2010). Trustee identified the
 2 Concast Parties, each by name, as the purchasers in his sale
 3 motion, and the bankruptcy court identified the Concast Parties,
 4 each by name, as the winning bidders in the Sale Order. Trustee
 5 stated that he had received two checks in full payment of the
 6 purchase price from the attorney for the Concast Parties. On
 7 this record, we conclude that the Concast Parties were adequately
 8 identified as the purchaser of the assets, and that they provided
 9 value.9
10 The bankruptcy court did not abuse its discretion in denying
11 Appellants’ motion to set aside the Sale Order.
12 B.
 Questions concerning the fairness of the
13 Sale Order are not before the Panel.
14 At oral argument before the Panel, counsel for Appellants
15 suggested that the auction procedures set forth in the Sale
16 Motion were unfair in that they unduly favored Concast Parties
17 and disfavored Appellants. To place Appellants’ argument in
18 context, we quote several paragraphs of the Sale Motion:
19 14. Pursuant to 11 U.S.C. § 363, the Trustee proposes
 to sell the Assets to the Concast Parties, for the
20 offered price of $75,000, together with a mutual
 release of the Concast Parties' claims against the
21 estate and the Trustee's claims against the Concast
 Parties, which offer shall be subject to any higher or
22 better offers at a hearing on the motion before the
 Bankruptcy Court.
23
24
 9
25 Appellants also suggest that the fact that Trustee
 substituted Moirbia Scottsdale, LLC for Trustee in the first four
26 counts of the Adversary Proceeding was evidence of the ambiguity
27 of the purchaser. This argument lacks merit. Interest in those
 four counts was purchased by the Concast Parties in the Sale
28 Order, and they were free to manage those assets as they chose.

 -18-
 1 15. The Assets are to be sold collectively for one
 price, which is the highest and best offer.
 2
 16. Any competing bidder must provide Trustee's
 3 counsel, Justin Niedzialek, proof of their financial
 ability to purchase the Assets and an earnest money
 4 deposit in the amount of $10,000 in certified funds
 made payable to "Daniel P. Collins, Trustee" three
 5 (3) business days prior to the Sale Hearing.
 6 17. The Earnest Money Deposit shall be refundable only
 if the bidder is not the successful bidder at the Sale
 7 Hearing.
 8 Appellants argue that the sale process was unfair because
 9 the Concast Parties were not required by Trustee to “pre-qualify”
10 to bid by posting the Earnest Money Deposit, while they had to do
11 so. Trustee’s counsel reminded the Panel that the Sale Motion,
12 granted by the bankruptcy court, required only that "competing
13 bidders" make a pre-sale deposit. Appellants argue that this
14 term as used in paragraph 16 is ambiguous because the common
15 meaning of competing bidder would include all parties that
16 compete at the auction and, thus, the bidding procedures unfairly
17 discriminated against Appellants and in favor of Concast Parties.
18 We reject Appellants’ fairness argument for several reasons.
19 First, this argument was not raised in the bankruptcy court
20 and, therefore, it may not be raised for the first time on
21 appeal. Vegas Townhomes Partners, LP v. Graham (In re Flamingo
22 55 Inc.), 646 F.3d 1253, 1255 (9th Cir. 2011) (“An issue not
23 raised in the bankruptcy court is waived on appeal.”).10
24
 10
25 At oral argument, counsel for Appellants represented
 that he believed this issue had been raised by Appellants in the
26 bankruptcy court. After reviewing the record and pleadings
27 related to the Sale Motion, and the bankruptcy court’s Minute
 Entry/Order denying the motion to set aside the sale, we have
28 (continued...)

 -19-
 1 Second, even if they timely raised them in the bankruptcy
 2 court, Appellants’ complaints about the sale procedures should
 3 have been addressed in an appeal of the bankruptcy court’s Sale
 4 Order. In other words, Appellants’ argument is far too late to
 5 warrant consideration in this appeal from the bankruptcy court’s
 6 order denying Appellants’ request to set aside the sale. United
 7 Student Funds, Inc. v. Wylie (In re Wylie), 249 B.R. 204, 215
 8 (9th Cir. BAP 2006)(issues not presented to the bankruptcy court
 9 in a reconsideration motion will not be reviewed on appeal).
10
 10
11 (...continued)
 been unable to confirm this claim. However, the docket does
12 include Appellants’ objection to the Sale Motion. We may take
 judicial notice of the underlying bankruptcy court records
13 relating to an appeal. O’Rourke v. Seaboard Sur. Co. (In re E.R.
14 Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1988). In that
 objection, Appellants apparently accepted the terms of the Sale
15 Motion, including the payment of $10,000 deposit, but objected to
 only two of the procedures:
16
17 50. Jeaneen Bonnett agrees with a down payment of
 $10,000 and with the $5,000 increments thereon as
18 described in the Motion to Sell.
19
 51. However, Ms. Bonnett objects to the time period of
20 three (3) days for the successful bidder to provide
 funds; rather, the successful bidder should provide the
21 funds within 24 hours.
22
 52. Bonnett also believes that more time is needed to
23 solicit bids, particularly because certain equity
 holders/creditors [residing] outside the United States
24
 were not notified of the Motion to Sell and other
25 bankruptcy procedures.
26 Jeaneen Bonnett and 100% Natural Gourmet, Inc.'s Response to
27 Trustee's Motion to Sell Personal Property Free and Clear of
 Liens, Claims and Interests Pursuant to 11 U.S.C. § 363 at 9,
28 July 3, 2012. Dkt. no. 388.

 -20-
 1 Third, Appellants’ argument is not to be found in their
 2 opening brief in this appeal, nor even in their reply brief. An
 3 issue not timely raised in a party’s opening brief is deemed
 4 waived. Friends of Yosemite Valley v. Kempthorne, 520 F.3d 1024,
 5 1033 (9th Cir. 2008).
 6 Finally, even were we to consider Appellants’ complaints
 7 about the sale process, their argument lacks merit. A trustee’s
 8 selection of bidding and sale procedures is a matter committed to
 9 the trustee’s business judgment, to which the bankruptcy court
10 and this Panel give deference. Simantob v. Claims Prosecutor,
11 LLC (In re Lahijani), 325 B.R. 282, 288-89 (9th Cir. BAP 2005).
12 Here, Trustee had engaged in negotiations with Concast Parties
13 which led to their $75,000 opening bid. Trustee was aware that,
14 in addition to the $75,000 bid, Concast Parties agreed to a
15 mutual release of claims with the bankruptcy estate. Trustee
16 indicates in the record that he believed the estate’s claims
17 against Concast Parties were not worth pursuing, so he could
18 reasonably conclude that it would be in the best interests of the
19 creditors to secure a release of Concast Parties’ claims. All
20 things considered, we cannot conclude that Trustee abused his
21 business judgment by not requiring an Earnest Money Deposit from
22 Concast Parties in advance of the sale. In retrospect,
23 Appellants made the deposit and were allowed to participate in
24 the auction. Moreover, the Concast Parties closed the sale, such
25 that the lack of a deposit from them worked no prejudice on the
26 bankruptcy estate.
27 CONCLUSION
28 For these reasons, the bankruptcy court’s order denying the

 -21-
 1 motion to set aside the Sale Order is AFFIRMED.
 2
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

 -22-